UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MUSTAFA MUHMOUD,

Plaintiff,

v.

CITY OF SAN JOSE, et al.,

Defendants.

Case No.   5:20-cv-08808-EJD

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RULE 12 MOTIONS**

Re: ECF Nos. 76, 79

Plaintiff Mustafa Muhmoud is the former owner of a hookah lounge in downtown San Jose and brings the instant § 1983 action, alleging discriminatory harassment from local officials. Defendants City of San Jose ("City"), Blage Zelalich, Leo Prescott, Rick Galea, Paul Messier, Dean Whipple, Ray Simpson, Christopher Creech, Carmen Dalpiaz, and Vance Chang (collectively "City Defendants") have moved to dismiss under Rule 12(b)(6) and Defendants Santa Clara Valley Transit Authority ("VTA") and Shannon Smyth-Mendoza ("Mendoza," collectively with VTA, "VTA Defendants") have moved for judgment on the pleadings under Rule 12(c).

The Court heard these motions on February 9, 2023.  Based on the parties' written submissions and oral arguments at hearing, the Court GRANTS IN PART and DENIES IN PART the City Defendants' motion to dismiss and GRANTS the VTA Defendants' motion for judgment on the pleadings.

## I.      BACKGROUND

Plaintiff Mustafa Muhmoud was the owner of Shisha Hookah Lounge (the "Lounge") in downtown San Jose from February 2017 until September 2020 when the business ceased operations.  First Am. Compl. ("FAC") ¶ 1, ECF No. 67.  The Lounge, as well as several other

United States District Court
Northern District of California

1  buildings, bordered an open-air public parking lot owned and operated by the VTA (the "Parking

2  Lot").  *Id.* ¶¶ 27–28.  The Parking Lot has been the location for a variety of incidents that have

3  necessitated San Jose Police Department ("SJPD") presence or involvement.   *Id.* ¶¶ 33–41.

4      From February to December 2017, Plaintiff operated the Lounge without issue.  *Id.* ¶ 25.

5  Before Plaintiff took possession of the business, it had also been operating as a hookah lounge for

6  approximately fourteen years.  FAC ¶ 23.  In December 2017, the property on which the Lounge

7  sits was sold to a real estate developer, Swenson, Market Street, and Swenson Development

8  Management, Inc. ("Swenson").  *Id.* ¶ 26. Plaintiff alleges that, after Swenson took over the

9  property, the SJPD increased their interactions with the Lounge.  *Id.* ¶ 27.

10     **A.      Special Use Permit**

11     In May 2018, the SJPD cited the Lounge for being open past midnight without a permit.

12  FAC ¶ 30.  Plaintiff alleges that other nearby businesses had also operated past midnight without a

13  permit and without being cited by the SJPD.  *Id.*

14     In October 2018, after five months of being cited multiple times by the SJPD, Plaintiff

15  applied for and was granted a Special Use Permit ("Permit") after paying a $40,000 fee.  *Id.* ¶¶

16  30–31.  The Permit authorized the Lounge to operate past midnight and to play amplified music

17  inside the Lounge so long as it was not audible outside.  *Id.* ¶ 31.

18     Plaintiff alleges that the City did not enforce the special use permit requirement against

19  other Muslim-owned or Middle Eastern-owned hookah lounges in the downtown San Jose area.

20  *Id.* ¶ 136.

21     **B.      Reduction of the Lounge's Occupancy**

22     In March 2019, the City Fire Prevention Inspector inspected the Lounge and found no

23  violations.  FAC ¶ 46.

24     In April 2019, Defendant SJPD Officer Rick Galea informed Plaintiff that the Lounge's

25  occupancy must be reduced on account of outdated City records.  *Id.* ¶ 47.  After Officer Galea

26  and Defendant San Jose Fire Department ("SJFD") City Inspector Dean Whipple inspected the

27  Lounge at Plaintiff's request, Whipple issued code violations and reduced the Lounge's occupancy

28

from 199 people to 49 people.  *Id.*

Plaintiff subsequently remediated the alleged violations and, after a re-inspection by Defendant SJFD City Inspector Ray Simpson on May 2, 2019, the Lounge's occupancy was increased to 160 people.  *Id.* ¶ 48.  On August 20, 2019, Simpson again reduced the occupancy to 99 people, but after a conversation with Plaintiff, he then approved the Lounge's occupancy to 118 people.  *Id.* ¶ 49.

On August 27, 2019, the City finally reduced the Lounge's occupancy again to 49 people. *Id.* ¶ 50.  Simpson indicated that the reduction was warranted because the Lounge did not have "legal access" to the Parking Lot.  *Id.*  Plaintiff, however, alleges that the Lounge did have a rear exit that opened into the Parking Lot.  *Id.* ¶ 27.  The reduced occupancy resulted in "significant revenue loss," which played a role in the Lounge's eventual closure in September 2020.  *Id.* ¶ 62.

Plaintiff alleges that no other nearby businesses or businesses bordering the Parking Lot was penalized for the lack of a rear exit.  *Id.* ¶¶ 51, 136.  The FAC also alleges that none of those businesses were owned or operated by persons of Middle Eastern descent.  *Id.*

### C.    Parking Lot Nuisances

Around the same time as the SJFD's interactions with Plaintiff, SJPD Officer Galea also met with Plaintiff on April 24, 2019, to discuss issues arising from the Parking Lot behind the Lounge.  FAC ¶ 32.  During this meeting, Officer Galea attributed the Parking Lot's activity to Plaintiff's business and instructed Plaintiff to hire security guards to patrol the Parking Lot and to compile profiles of the Lounge's customers, specifically the "type of people" in "urban" attire "who might cause problems."  *Id.* ¶¶ 33–34.  Officer Galea also suggested that Plaintiff dial 311 to contact Defendant Officer Prescott for assistance with activity on the Parking Lot.  *Id.* ¶ 33.

Between April to June 2019, Plaintiff frequently dialed 311 to report rowdy activity in the Parking Lot but never received any assistance from the SJPD.  *Id.* ¶¶ 35–36.  Shortly afterwards, Plaintiff hired security guards to monitor the Parking Lot at his own expense, costing approximately $48,000.  *Id.* ¶ 41.

The FAC further alleges that, around September 2019, there were communications among

United States District Court
Northern District of California

United States District Court
Northern District of California

1  SJPD officers, VTA employees, and Plaintiff's landlord Swenson.  *Id.* ¶ 42.  Specifically, a VTA

2  real estate agent arranged a meeting between Defendant SJPD Officer Messier and Swenson to

3  "resolv[e] the tenant issues going on at [Swenson's] property."  *Id.*

4      A few months later, on November 25, 2019, the City Attorney's Office sent Plaintiff a

5  letter accusing the Lounge of maintaining a public nuisance, based on purported unlawful

6  marijuana use, a DJ booth, consumption of alcohol, and unpermitted tobacco use on the Lounge's

7  premises.  *Id.* ¶ 52; *see also* Request for Judicial Notice, Ex. A ("Nov. 25 Letter"), ECF No. 36.[1]

8  Plaintiff disputes several of these accusations and alleges that he has never received a police report

9  or formal citation substantiating any of the activities complained of.  FAC ¶¶ 53, 55, 57.  The Nov.

10  25 Letter further demanded that Plaintiff cease and desist the violations and indicated that the City

11  may otherwise bring nuisance abatement actions.  Nov. 25 Letter, at 1, 4.  The letter also

12  instructed Plaintiff to schedule a meeting with Deputy City Attorney Creech to discuss "proactive

13  measures to prevent the recurrence of this nuisance behavior."  *Id.*  About two weeks later,

14  Plaintiff's landlord Swenson sent Plaintiff a 3-day notice of eviction based on the alleged nuisance

15  activity in the City's letter.  FAC ¶ 54.

16      On December 18, 2019, Plaintiff met with the Defendant Deputy City Attorney Creech,

17  City Attorney Carmen Dalpiaz, Officer Galea, and the City Downtown Manager Blage Zelalich.

18  *Id.* ¶ 55.  Plaintiff alleges that none of the attendees "participated meaningfully" to help Plaintiff

19  develop a proactive plan for the Lounge's remediation, but instead issued an ultimatum: Plaintiff

20  could either (1) abandon the premises; (2) relinquish the Permit and operate a different business on

21  the location; or (3) continue operating the Lounge, relinquish the Permit, allow SJPD entry

22  without notice, employ five security guards daily, and maintain and provide records of Lounge

23  employees and interior video surveillance to the SJPD.  *Id.* ¶ 56.  During the same meeting,

24  Plaintiff was served with an unlawful detainer action initiated by Swenson.  *Id.* ¶ 55.

25

26  ─────────────────

27  [1] The Court GRANTS Defendants' Request for Judicial Notice (ECF No. 36) of the Nov. 25 Letter, as it was expressly referenced and incorporated into the FAC.  *See* FAC ¶¶ 52–53.  Plaintiff also has not opposed the request.

28  Case No.:  5:20-cv-08808-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFS.' RULE 12 MOTIONS

In the months following the December 18 meeting, the City Attorney's Office continued to insist that Plaintiff abandon the Permit, allow SJPD entry without notice, install internal security cameras, and maintain security for the Parking Lot, even when Plaintiff offered to cease operations as a hookah lounge and open a coffee shop instead. *Id.* ¶¶ 59–61.  However, no judicial, administrative, or other enforcement proceedings were ever initiated against Plaintiff or the Lounge.  *Id.* ¶ 59.

On September 14, 2020, Plaintiff ceased the Lounge's operations and vacated the premises based on "significant revenue loss due to reduced occupancy."  *Id.* ¶ 62.  Plaintiff alleges that City Defendants' actions were motivated by a desire to shut down the Lounge and transform the area into the VTA's Silicon Valley BART station.  *Id.* ¶¶ 42, 63.

Plaintiff alleges that, during the relevant time period, the SJPD did not ask the nearby tiki bar or gentleman's club to share responsibility for patrolling the Parking Lot and that none of those businesses were operated by persons of Middle Eastern descent.  FAC ¶¶ 37, 43.

### D.    Procedural History

Plaintiff filed his original complaint *pro se* on December 11, 2020, about three months after his Lounge went out of business.  His initial complaint asserted claims for malicious prosecution, intentional infliction of emotional distress, breach of contract, and violations of his constitutional rights.  ECF No. 1.

After being served, the City Defendants moved to dismiss the complaint.  ECF No. 35.  The Court referred Plaintiff to the Federal Pro Bono Project and stayed proceedings pending appointment of pro bono counsel.  ECF No. 49.  After pro bono counsel was appointed, Plaintiff filed an opposition to the City Defendants' motion and filed a countermotion to amend his complaint.  ECF No. 57.  On May 16, 2022, the Court granted Plaintiff leave to amend and found Defendant's motion to dismiss to be moot.  ECF No. 66.

On June 15, 2022, Plaintiff filed the First Amended Complaint.  ECF No. 67.  The VTA Defendants subsequently filed an answer but the City Defendants did not.  ECF No. 70.

On July 13, 2022, the City Defendants filed the instant motion to dismiss the FAC.  ECF

No. 76 ("City Mot.").  After the City's motion was fully briefed, on August 9, 2022, the VTA Defendants filed the instant motion for judgment on the pleadings.  ECF No. 79 ("VTA Mot.").

## II.      LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of claims alleged in the complaint.  Fed. R. Civ. P. 12(b)(6); *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal "is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Judgment on the pleadings is appropriate when, even if all material facts in the pleadings are true, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  On a motion for judgment on the pleadings, "all material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party." *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004).  In other words, the standard for a Rule 12(c) motion is essentially the same as that for a Rule 12(b)(6) motion. *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012).

## III.      CITY DEFENDANTS' MOTION TO DISMISS

Plaintiff asserts ten claims of constitutional violations against the City Defendants: (1) substantive due process under the Fourteenth Amendment; (2) substantive due process under the California Constitution; (3) procedural due process under the Fourteenth Amendment; (4)

procedural due process under the California Constitution; (5) physical takings under the Fifth Amendment; (6) regulatory takings under the Fifth Amendment; (7) takings under the California Constitution; (8) equal protection under the Fourteenth Amendment; (9) "class of one" equal protection under the Fourteenth Amendment; and (10) equal protection under the California Constitution.  The City Defendants have moved to dismiss all claims asserted based on the FAC's failure to state a claim; prosecutorial immunity for Defendants Creech, Dalpiaz, and Chang; and qualified immunity for the remaining individual Defendants.

With regards to the state claims asserted only against the City of San Jose, although the California Supreme Court has the authority to construe the California Constitution independently of federal courts and the U.S. Constitution, the equal protection provisions in the California Constitution "have been generally thought in California to be substantially the equivalent of the equal protection clause of the Fourteenth Amendment to the United States Constitution." *Manduley v. Superior Ct.*, 27 Cal. 4th 537, 571 (2002), *as modified* (Apr. 17, 2002).  In both the FAC and his oppositions to the Rule 12 motions, Plaintiff has not made any effort to distinguish his California constitutional claims from his federal claims in terms of the substantive rights they protect.  Rather, he appears to invoke the California Constitution only as a means to seek injunctive relief.  Opp. City Mot. 24–25; *see also* FAC ¶¶ 79, 97, 122, 139.  Accordingly, the Court will analyze and resolve the state constitutional claims consistently with his § 1983 claims.

### A.    Absolute Prosecutorial Immunity

Before the Court turns to the sufficiency of the FAC's allegations, it must first address the prosecutorial immunity that Defendants Creech, Dalpiaz, and Chang ("Attorney Defendants") have invoked.  City Mot. 15–17.  The Attorney Defendants contend that their conduct fall within the absolute immunity that shield prosecutors of civil enforcement actions.  Plaintiff objects that the Attorney Defendants' actions do not warrant absolute immunity because they were not intimately or closely associated with the judicial process, as evidenced by the fact that no nuisance abatement or permit revocation proceeding was filed.  Opp. City Mot. 20.

The U.S. Supreme Court has long recognized that the law grants "prosecutors absolute

immunity from common-law tort actions, say, those underlying a 'decision to initiate a prosecution.'" *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 (2009).  However, this immunity only attaches to actions that are "intimately associated with the judicial phase of the criminal process," as opposed to "investigative or administrative tasks." *Id.* at 342–43 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)).  The Supreme Court has found absolute immunity to apply when "a prosecutor prepares to initiate a judicial proceeding or appears in court to present evidence in support of a search warrant application," but not when a "prosecutor gives advice to police during a criminal investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application." *Id.* at 343.

Here, the FAC asserts claims against Attorney Defendants based on the Nov. 25 letter sent to Plaintiff and the subsequent meetings where they made "nonjudicial ultimatums."  FAC ¶¶ 52–61; *see also* ECF No. 36.  Having reviewed the Nov. 25 Letter, the Court finds that the letter falls squarely within the ambit of absolute prosecutorial immunity.  The Nov. 25 Letter begins by reciting the role of the San Jose City Attorney's Office in "prosecut[ing], among other things civil nuisance abatement actions" and citing the various Municipal Code violations attributed to the Lounge.  Nov. 25 Letter, at 1–3.  The Nov. 25 Letter finishes by noting the possibility and consequences of a nuisance abatement suit, demanding that Plaintiff cease and desist certain conduct, and requesting contact with Defendant Creech to discuss preventative measures.  *Id.* at 3–4.  These express references to the City Attorney's authority and intention to bring nuisance abatement suits establish that Defendant Creech was acting in his capacity as an advocate for the City.  Indeed, the absolute immunity extends not only to a prosecutor's activities before a formal tribunal but also as far back as the "decision to initiate a prosecution."  *Van de Kamp*, 555 U.S. at 341; *see also Burns v. Reed*, 500 U.S. 478, 491 (1991) ("[T]he duties of the prosecutor in his role as advocate for the State involve actions *preliminary to the initiation of a prosecution*.") (emphasis added); *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) ("[A]cts undertaken by a prosecutor in *preparing for the initiation of judicial proceedings* or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.")

United States District Court
Northern District of California

United States District Court
Northern District of California

1   (emphasis added).  Defendant Creech's actions relating to the Nov. 25 Letter, therefore, are

2   entitled to absolute prosecutorial immunity.

3          Similarly, the Court finds that the Attorney Defendants' subsequent meetings and

4   communications with Plaintiff are also protected by the absolute immunity.  The core function of

5   these meetings was always to abate the perceived public nuisance on Plaintiff's property by

6   demanding Plaintiff undertake changes to address the perceived nuisance source.  *See* FAC ¶¶ 56,

7   59–61; *see also generally* Nov. 25 Letter.  Moreover, none of the Attorney Defendants' conduct

8   can be characterized as "investigative or administrative tasks" nor do they bear any similarities to

9   the activities that the Supreme Court found undeserving of absolute immunity.  *See Van de Kamp*,

10  555 U.S. at 343 (noting no absolute immunity applies when "prosecutor gives advice to police

11  during a criminal investigation, when the prosecutor makes statements to the press, or when a

12  prosecutor acts as a complaining witness in support of a warrant application") (internal citations

13  omitted).  Because the Attorney Defendants' demands and negotiations with Plaintiff were always

14  made in the shadow of formal prosecution, the Court finds that these activities were "intimately

15  associated" with the judicial phase of their nuisance abatement efforts.

16         Plaintiff attempts to vitiate the absolute prosecutorial immunity by characterizing Attorney

17  Defendants' demands as "nonjudicial ultimatums" and emphasizing the fact that no administrative

18  proceedings were ever filed as a result of Attorney Defendants' activities.  Opp. City Mot. 20–21.

19  Both attempts fail.  First, the talismanic "nonjudicial" label Plaintiff attaches to Attorney

20  Defendants' nuisance abatement efforts have no bearing on the immunity analysis, which

21  predominantly considers the activities' *function*.  *See Van de Kamp*, 555 U.S. at 342.  Regardless

22  of what Plaintiff calls them, the demands made in the Nov. 25 Letter and the subsequent meetings

23  operate to abate the perceived public nuisance, a function the City Attorney is authorized to

24  undertake on behalf of the People of the State of California and the citizens of San Jose.  Nov. 25

25  Letter 1, 3–4.  With respect to Plaintiff's second contention that prosecutorial immunity does not

26  protect activities if no enforcement proceeding is filed, this proposition finds no support in the

27  case law.  The Supreme Court has recognized that absolute immunity extends to a whole host of

28  Case No.: 5:20-cv-08808-EJD

1    pre-litigation activities, including the "decision to initiate a prosecution," *Van de Kamp*, 555 U.S.

2    at 341, "the professional evaluation of the evidence assembled by the police," *Buckley*, 509 U.S. at

3    273, and "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings."

4    *Id*.  None of the aforementioned activities require a formal action be filed before the immunity

5    attaches.  In short, neither of Plaintiff's arguments in opposition are persuasive.

6        Based on these facts, the Court finds that the Attorney Defendants' conduct alleged in the

7    FAC were intimately involved with the judicial process, were not investigative or administrative

8    in function, and are therefore entitled to absolute prosecutorial immunity.  The claims against

9    Defendants Creech, Dalpiaz, and Chang are therefore DISMISSED.  "[W]here prosecutorial

10   immunity bars a plaintiff's claim, the deficiencies in that claim cannot be cured by amendment."

11   *Inman v. Anderson*, 294 F. Supp. 3d 907, 917 (N.D. Cal. 2018).  Accordingly, this dismissal is

12   WITHOUT LEAVE TO AMEND.

13       **B.    Qualified Immunity**

14       The Court will also briefly note at the outset that all individual Defendants have invoked

15   qualified immunity to shield their alleged conduct.  City Mot. 17–18; VTA Mot. 8.  "The doctrine

16   of qualified immunity protects government officials from liability for civil damages insofar as

17   their conduct does not violate clearly established statutory or constitutional rights of which a

18   reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal

19   quotation marks omitted).  To overcome qualified immunity, a plaintiff must make two showings:

20   first, the facts plaintiff has alleged or shown must make out a violation of a constitutional right;

21   and second, the right at issue must have been "clearly established" at the time of defendant's

22   alleged misconduct.  *Id.* at 232 (summarizing *Saucier v. Katz*, 533 U.S. 194 (2001)). A plaintiff

23   must satisfy both prongs to defeat an assertion of qualified immunity, and the Court may consider

24   the two prongs in whichever order.  *Id.* at 236.

25       Given its discretion to address the qualified immunity inquiries in whichever sequence, the

26   Court will first proceed claim-by-claim to assess whether Plaintiff has sufficiently alleged a

27   constitutional violation.  If the Court finds that the FAC has indeed stated such a violation, the

28   Case No.: 5:20-cv-08808-EJD

United States District Court
Northern District of California

1    Court will only then address whether the violation was "clearly established" at the time of

2    Defendants' conduct.

3         **C.       Substantive Due Process**

4         For all of his federal constitutional claims, Plaintiff invokes 42 U.S.C. § 1983 as the

5    statutory cause of action.  "To succeed on a § 1983 claim, a plaintiff must show that (1) the

6    conduct complained of was committed by a person acting under color of state law; and (2) the

7    conduct deprived the plaintiff of a federal constitutional or statutory right."  *Patel v. Kent Sch.*

8    *Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).  No Defendant has contended that they were not acting

9    under color of state law; therefore, the Court's primary inquiry will be whether Defendants

10   deprived Plaintiff of a federal constitutional or statutory right.

11        First, Plaintiff alleges that the City Defendants' targeting of his business violated his

12   substantive due process property rights under (1) the Lease Agreement and (2) the Permit by

13   targeting the Lounge without reasonable justification and rendering the Permit useless.  FAC ¶¶

14   67–69.  Substantive due process "forbids the government from depriving a person of life, liberty,

15   or property in such a way that 'shocks the conscience' or 'interferes with the rights implicit in the

16   concept of ordered liberty.'"  *Corales v. Bennett*, 567 F.3d 554, 568 (9th Cir. 2009).

17        As a preliminary matter, Defendants do not appear to dispute the existence of some

18   property interest protected by the Constitution for the purposes of Due Process Clause analysis.

19   *See generally* City Mot. 6–7.  Plaintiff's rights in his Lease Agreement and the Permit are indeed

20   cognizable property interests protected by the Due Process Clause.[2]  *See, e.g.*, *Kerley Indus., Inc.*

21   *v. Pima Cnty.*, 785 F.2d 1444, 1446 (9th Cir. 1986) ("Having granted appellant a permit to operate

22   its plant, the county could not take it away arbitrarily, for improper reasons, or without appropriate

23   procedural safeguards.") (internal citation omitted).  Accordingly, the Court will proceed to

24   consider whether City Defendants had deprived Plaintiff of those property interests.

25   _____

26   [2] Although Plaintiff appears to also take issue generally with the alleged increased SJPD's
     presence around the Lounge (FAC ¶¶ 28, 62), the FAC does not purport to allege deprivation of
27   liberty rights and focuses only on vested property rights (FAC ¶¶ 67–69).  The Court, accordingly,
     will limit its analysis to Plaintiff's property interests.

28   Case No.: 5:20-cv-08808-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFS.' RULE 12 MOTIONS
     11

United States District Court
Northern District of California

1. **Deprivation of Interests**

The Court finds that, as presently pled, the FAC has failed to allege that Defendants deprived him of any property interests.  The FAC does not allege that the City Defendants ever revoked Plaintiff's Permit or otherwise took any formal actions that prevented Plaintiff from using the Permit.  Instead, the FAC essentially relies on a theory of *de facto* deprivation where the City Defendants rendered the Permit "effectively worthless" by "affirmatively demand[ing] that Mr. Muhmoud relinquish the [Permit]."  Opp. City Mot. 6 (citing FAC ¶ 56).

"Demanding" that an individual relinquish certain rights, however, is not the same as depriving an individual of those rights.  The Ninth Circuit has rejected Due Process claims under similar factual circumstances where municipal entities threatened but did not take any actual enforcement actions to restrict land use.  In *Guatay Christian Fellowship v. Cnty. of San Diego* ("*Guatay*"), 670 F.3d 957 (9th Cir. 2011), the County of San Diego issued a notice of violation and a cease-and-desist letter to the plaintiff church regarding religious activities on a property not zoned for religious assembly.  In response to these letters, the pastor ceased all religious assembly on the property.  *Id.* at 965.  Holding that the plaintiff "ha[d] not made a sufficient threshold showing that there has been a deprivation of any kind," the Ninth Circuit reasoned that:

> [A]lthough strongly worded, *the County's* [notice of violation] *and cease-and-desist order did not themselves deprive the* [plaintiff] *of any interests*.  The County would have had to bring an enforcement action in court in order to actually enforce the zoning regulations—and it in fact notified [plaintiff] of that in its May 2008 letter.  Without bringing [plaintiff] to court, the County had no power to, for example, padlock the building doors or make arrests, nor did it take any such action. . . . Instead, the [plaintiff] chose to vacate the property and bring the County to court. . . . While the fraught relations between the County and the [plaintiff] are lamentable, *the* [plaintiff]'*s reaction to the County's communications in the spring of 2008 does not amount to the County's depriving the* [plaintiff] *of a liberty interest recognizable under Due Process Clause jurisprudence*.

*Guatay*, 670 F.3d at 984 (emphasis added).

Confronted with analogous circumstances, the Court finds no basis to depart from *Guatay*'s well-reasoned holding in the present case.  Like the *Guatay* plaintiff, Mr. Muhmoud alleges that the City Defendants cited the Lounge for a variety of nuisance activity.  *Compare* FAC ¶¶ 52–53 *with Guatay*, 670 F.3d at 964 (indicating that plaintiff was cited because "the

1   number of mobile homes exceeded the permitted number of sites, occupants remained past the

2   ninety-day permitted limit, septic system issues, illegal structures, and excessive vegetation on

3   some of the mobile homes [and] the recreation hall had been 'illegally converted for use as a

4   church'"). Like the *Guatay* plaintiff, Mr. Muhmoud alleges that City Defendants threatened to

5   take legal action unless the purported violations were corrected. *Compare* FAC ¶¶ 59–61 *with*

6   *Guatay*, 670 F.3d at 965 ("The [County's] letter also stated the County had no choice but to take

7   legal action against the [plaintiff] unless it ceased conducting religious assembly on the property

8   until a permit was granted."). And like the *Guatay* plaintiff, Mr. Muhmoud ultimately elected to

9   vacate the premises without any formal enforcement proceedings brought by the City Defendants.

10  *Compare* FAC ¶¶ 61–62 *with Guatay*, 670 F.3d at 965 ("Pastor Peterson testified that in response

11  to this letter, fearing prosecution or suit by the County, the [plaintiff] ceased all religious assembly

12  on the property."). In short, *Guatay* stands for the proposition that merely demanding remediation

13  or cessation of activities—without initiating any proceedings to enforce the demand—does not

14  deprive any interest cognizable under Due Process Clause jurisprudence. 670 F.3d at 984.

15          The primary thrust of Plaintiff's arguments in opposition—that City Defendants

16  "affirmatively demanded" relinquishing the Permit and Plaintiff had "no viable option but to

17  abandon the [Permit]"—is largely deflected by the facts and reasoning of *Guatay*. Plaintiff's other

18  arguments find no support in the FAC's factual allegations and appear to be zealous hyperboles.

19  Opp. City Mot. 8 (arguing that Plaintiff "was *not able to use the* [Permit] *freely* in light of City

20  Defendants' affirmative demand" and that "City Defendants *coerced* Mr. Muhmoud into

21  abandoning his Business") (emphasis added). Furthermore, the single case authority cited in

22  support of Plaintiff's substantive due process claim, *Holman v. City of Warrenton*, 242 F. Supp. 2d

23  791 (D. Or. 2002), does his position more harm than good. There, the district court granted

24  summary judgment in the defendant's favor on the substantive due process claim, finding the

25  claim to be preempted by the Fifth Amendment Takings Clause. *Id.* at 802–03. Moreover, the

26  deprivation in *Holman* is acutely distinguishable because the plaintiff had applied for a building

27  permit but never received one or enjoyed any benefits, whereas Mr. Muhmoud successfully

28  Case No.: 5:20-cv-08808-EJD
    ORDER GRANTING IN PART AND DENYING IN PART DEFS.' RULE 12 MOTIONS

United States District Court
Northern District of California

1    obtained the Permit and enjoyed its benefits without any formal revocation.  *Id.* at 805–06.

2    Plaintiff's arguments in opposition, therefore, are not availing.

3              **2.      Preemption**

4              In addition to the FAC's failure to plead deprivation for Due Process purposes, the Court

5    will also remark that Plaintiff's property-based substantive due process claims may also be subject

6    to dismissal as preempted by the Fifth Amendment's Takings Clause.  Where another Amendment

7    (other than the Fourteenth) "provides an explicit textual source of constitutional protection against

8    this sort of physically intrusive governmental conduct, that Amendment, not the more generalized

9    notion of 'substantive due process,' must be the guide for analyzing these claims."  *Graham v.*

10   *Connor*, 490 U.S. 386, 395 (1989); *Crown Point Dev., Inc. v. City of Sun Valley*, 506 F.3d 851,

11   855–56 (9th Cir. 2007) ("To the extent a property owner's complaint falls within [a] recognized

12   application of the Takings Clause . . . the claim must be analyzed under the Fifth Amendment

13   whether or not it proves successful."); *Colony Cove Properties, LLC v. City of Carson*, 640 F.3d

14   948, 960 (9th Cir. 2011) ("To the extent Colony Cove alleges a due process violation on the

15   ground that [defendant's] application of the [challenged ordinance] to Colony Cove's application

16   for a rental rate increase denied it a fair return on its investment, [that claim] is subsumed by the

17   Takings Clause.").

18            Neither party briefed the issue of Fifth Amendment preemption, but as the Court observed,

19   one of Plaintiff's cited authorities involved such a preemption.  *See* Opp. City Mot. 8 (citing

20   *Homan*, 242 F. Supp. 2d at 802–03).  When prompted by the Court at oral arguments, Plaintiff

21   cited *Crown Point*, 506 F.3d 851, for the proposition that a Takings claim can be pled alongside a

22   substantive due process claim for property interests.  2/9/23 Hr'g Tr. 50:3–6.  City Defendants

23   took no position on preemption, stating only that there was no taking.  *Id.* 50:10–13.

24            Because it lacks the benefit of adversarial briefing on this topic, the Court issues no

25   opinion as to whether Plaintiff's substantive due process claims as presently alleged are preempted

26   by the more specific protections under the Takings Clause.  However, if Plaintiff intends to

27   continue asserting his substantive due process claims, he would be well advised to ensure that his

28   Case No.: 5:20-cv-08808-EJD

1   Due Process theories and allegations do not "fall[] within [a] recognized application of the

2   Takings Clause." *Crown Point*, 506 F.3d at 855–56.

3                                          * * *

4          In summary, the Court finds that the FAC has failed to allege that Defendants deprived

5   Plaintiff of any substantive property interests cognizable under the Due Process Clause.  The First

6   and Second Claims for violations of substantive due process will be DISMISSED.  However,

7   because the Court cannot determine that any further factual amendment would be futile to state

8   *any* claim for substantive due process, Plaintiff will be granted LEAVE TO AMEND.

9          **D.      Procedural Due Process**

10         Plaintiff also claims that Defendants violated his right to procedural due process because

11   their "nonjudicial enforcement ultimatums" did not follow the City's processes for revoking

12   special use permits or abating nuisances.[3]  FAC ¶¶ 84–85, 88.  City Defendants argue that the

13   FAC only alleges the demands made of Plaintiff but no actual deprivation of his property rights.

14   City Mot. 10.  Additionally, City Defendants point out that communications to Plaintiff regarding

15   nuisance abatement and "demanding" certain remedial actions take place would constitute the very

16   notice that Plaintiff claims he did not receive.  *Id.*

17         To state a procedural due process claim, a plaintiff must allege "(1) a liberty or property

18   interest protected by the Constitution; (2) a deprivation of the interest by the government; and (3)

19   lack of process."  *Fikre v. Fed. Bureau of Investigation*, 35 F.4th 762, 776 (9th Cir. 2022) (internal

20   brackets omitted).  In the context of land use, there need not be a final decision on land use before

21   a plaintiff can bring a procedural due process claim; however, it must be "clear that a distinct

22   deprivation of a constitutionally protected interest in liberty or property has already occurred."

23   *Guatay*, 670 F.3d at 984.

24

25   ────────────────

26   [3] It is worth noting that the FAC does not assert a procedural due process claim arising from the
     SJFD's reduction and fluctuations in the Lounge's maximum occupancy, nor did Plaintiff's
     counsel express an intent to do so when queried by the Court at oral arguments.  *See generally*
27   FAC ¶¶ 46–51, 80–89; 2/9/23 Hr'g Tr. 25:7–27:1.  Accordingly, the Court expresses no opinion as
     to the vitality of a procedural due process claim arising from the occupancy fluctuations.

28

1    Because Plaintiff's procedural due process claim implicates the same interests as his

2    substantive due process claim (*i.e.*, property interests in his Lease Agreement and the Permit), the

3    Court's deprivation analysis applies with equal force here.  *See supra* Section III.A.1.  The FAC

4    does not allege that any Defendant revoked the Permit or otherwise restricted any of Plaintiff's

5    rights under the Lease Agreement or the Permit, nor do allegations of demands without

6    enforcement constitute deprivation under Due Process jurisprudence.  *Id.*; *see also, e.g.*, *Guatay*,

7    670 F.3d at 984.  Indeed, the FAC appears to recognize that, if the City Defendants had initiated

8    formal enforcement proceedings to revoke the Permit or abate any alleged nuisances, the San Jose

9    Municipal Code provided formalized procedures in place for adjudication.  FAC ¶¶ 84–86.

10   Again, Plaintiff has cited no case authority for his theory that mere demands and threats of

11   litigation alone can constitute deprivation without due process of law.  Nor can he, as the case law

12   appears to lie soundly against his favor.  For instance, the Ninth Circuit observed in *Guatay* that,

13   "[h]ad the County brought [plaintiff] to court, [plaintiff] would have received notice, an

14   opportunity to be heard, and an opportunity to present evidence; at the very least, we would have a

15   record upon which to make a judgment about whether the [plaintiff] had received sufficient

16   process.  Instead, [plaintiff] chose to vacate the property and bring the County to court."  670 F.3d

17   at 984.  Here as well, the FAC's allegations at best support inferences that the City Defendants

18   issued specific demands with threats of litigation if Plaintiff refused to comply.  FAC ¶¶ 52–56;

19   *see also supra* Section III.A.1.  These actions, however, do not constitute deprivation by

20   themselves, and the Constitution does not demand notice and hearing before a state official may

21   inform citizens of their violations and consequences.  *See Hussein v. City of Perrysburg*, 617 F.3d

22   828, 832 (6th Cir. 2010) ("[I]f a state official states his view that a citizen's actions are in violation

23   of the law and threatens litigation, this is not a deprivation of the citizen's interest without notice

24   and an opportunity to be heard. . . .  To demand notice before an official can inform citizens that

25   they are in violation of the law would be to *demand notice as a precondition of notice*.")

26   (emphasis added); *Black Earth Meat Mkt., LLC v. Vill. of Black Earth*, 834 F.3d 841, 849 (7th Cir.

27   2016) ("In general, a threat to sue cannot qualify as a deprivation of procedural due process.").  In

28

United States District Court
Northern District of California

1   sum, the City Defendants' demands and threats of litigation did not deprive Plaintiff of due

2   process of law; indeed, the ensuing litigation would have been his opportunity to be heard.

3          Accordingly, the City Defendants' motion to dismiss Plaintiff's Third and Fourth Claims

4   for procedural due process is GRANTED.  Because the Court cannot conclude that further factual

5   amendment would be futile to pleading a procedural due process violation, the Court will grant

6   Plaintiff LEAVE TO AMEND.

7          **E.      Fifth Amendment Takings Clause**

8          The FAC's Fifth and Sixth Claims allege physical and regulatory takings, respectively.

9   FAC ¶¶ 98–119.  The Seventh Claim invokes the corresponding takings clause in the California

10  Constitution to seek injunctive relief.  *Id.* ¶¶ 121–22.

11                **1.      Physical Takings**

12         Plaintiff's physical takings claim is premised on the allegations that the SJPD "would enter

13  Plaintiff's Business at random to conduct 'welfare checks' without any prior notice" and that the

14  City Defendants' demands to Plaintiff included a "provision that granted the [City Defendants] a

15  right to enter the Business at any time, without prior notice."  FAC ¶¶ 101–02; Opp. City Mot. 14–

16  15.  City Defendants move to dismiss on the same grounds as with the Due Process claims, *i.e.*,

17  Plaintiff has failed to allege that Defendants deprived him of any property interest.  City Mot. 6.

18         "When the government physically acquires private property for a public use, the Takings

19  Clause imposes a clear and categorical obligation to provide the owner with just compensation."

20  *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2071 (2021).  Additionally, a "permanent

21  physical occupation" has occurred when "individuals are given a permanent and continuous right

22  to pass to and fro, so that the real property may continuously be traversed, even though no

23  particular individual is permitted to station himself permanently upon the premises."  *Nollan v.*

24  *California Coastal Comm'n*, 483 U.S. 825, 832 (1987).  However, the U.S. Supreme Court has

25  also recognized that "many government-authorized physical invasions will not amount to takings

26  because they are consistent with longstanding background restrictions on property rights," such as

27  requiring access to abate nuisances, for public or private necessity, to effect an arrest or enforce

28  Case No.: 5:20-cv-08808-EJD

1   the criminal law, or conduct reasonable searches consistent with the Fourth Amendment. *Cedar*

2   *Point*, 141 S. Ct. at 2079. Additionally, the government may require property owners to "cede a

3   right of access as a condition of receiving certain benefits, without causing a taking." *Cedar*

4   *Point*, 141 S. Ct. at 2079 ("Under this framework, government health and safety inspection

5   regimes will generally not constitute takings.").

6        To the extent Plaintiff's claim is based on City Defendants' demand for a "right to enter

7   the Business at any time, without prior notice," this theory shares the same deficiencies as his Due

8   Process claims. Specifically, Plaintiff has not presented any authority that suggests a demand for

9   future access may constitute a physical taking in and of itself. To the contrary, the Supreme Court

10  has held that the "government violates the Takings Clause *when it takes* property without

11  compensation, and [] a property owner may bring a Fifth Amendment claim under § 1983 *at that*

12  *time*." *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2177 (2019) (emphasis added). The

13  FAC contains allegations regarding City Defendants' "ultimatum" that Plaintiff "allow SJPD to

14  enter the Business any time without notice," FAC ¶¶ 56, 59, but critically lacks any allegation that

15  Plaintiff agreed to, complied with, or was compelled to comply with those demands. Without any

16  allegation that the City Defendants did, in fact, acquire a right of access to the Lounge or

17  otherwise restrained Plaintiff's right to exclude, the FAC has failed to allege a deprivation in

18  violation of the Takings Clause on the basis of the City Defendants' demands alone.

19        In addition to the City Defendants' alleged demands, the FAC also alleges that the City

20  Defendants "was already de facto acting as if Plaintiff had waived his, his employees', and his

21  customers Constitutional rights (when he had not) and SJPD would enter Plaintiff's Business at

22  random to conduct 'welfare checks' without any prior notice." FAC ¶ 102; *see also* FAC ¶ 28

23  ("SJPD uniformed officers, led by Defendant Prescott, also entered the Business armed with

24  firearms to conduct 'welfare checks' on multiple occasions."). Plaintiff does not defend this

25  theory of physical taking in his opposition (Opp. City Mot. 14–15), nor do City Defendants

26  address these allegations in the context of physical taking (City Mot. 6). In any event, however,

27  the FAC's allegations of sporadic law enforcement "welfare checks" are insufficient to state a

28

claim for a physical taking. First, to the extent that Plaintiff objected to the SJPD's physical "welfare checks" on his property, these isolated physical invasions more closely resemble trespass actions than an appropriation of Plaintiff's constitutional rights. *See Cedar Point*, 141 S. Ct. at 2078 ("Isolated physical invasions, not undertaken pursuant to a granted right of access, are properly assessed as individual torts rather than appropriations of a property right."). Second, the Supreme Court has recognized that "the government may require property owners to cede a right of access as a condition of receiving certain benefits, without causing a taking" and observed that "government health and safety inspection regimes will generally not constitute takings." *Cedar Point*, 141 S. Ct. at 2079. Although the FAC does not allege the purposes and specific conduct surrounding these "welfare checks," the fact that City officers entered Plaintiff's property to check for "any risk posed to the public" (*id.* at 2080) is insufficient to state a physical taking on its own.

Based on the above, the Court finds that the FAC fails to state a claim for physical taking. Although a permanent and continuous right of access may constitute a physical taking, Plaintiff does not allege that he granted such a right to the City Defendants nor has he asserted a cognizable legal theory by which the City Defendants' occasional "welfare checks" may be treated as physical takings. Accordingly, the FAC's Fifth Claim will be DISMISSED for failure to state a claim. The Court, however, does not find that these deficiencies cannot be cured by additional factual amendments and will grant Plaintiff LEAVE TO AMEND.

### 2.    Regulatory Takings

In addition to physical takings, the FAC also asserts a claim for regulatory takings, alleging that City Defendants' "actions to enforce alleged nuisance violations" deprived Plaintiff of his property rights in the Permit and Lease Agreement. FAC ¶¶ 111–13.

Under the Supreme Court's regulatory takings doctrine, "if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922). The aim is to "identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539 (2005).

United States District Court
Northern District of California

1    Here, the FAC's regulatory takings allegation are deficient for at least two reasons.  First,

2  similar to the deficiency in his other constitutional claims, Plaintiff has failed to allege how the

3  City Defendants' attempts to "enforce alleged nuisance violations" deprived him of any

4  constitutionally protected property rights.  FAC ¶ 112.  As the FAC alleges, "[n]o judicial

5  proceeding was ever filed against Plaintiff to abate any nuisance or revoke the Special Use

6  Permit," FAC ¶ 86, and, therefore, Plaintiff was never ordered to abate any activities or have his

7  Permit revoked.  Plaintiff has not identified—and the Court has been unable to find—any

8  authority that suggests a regulatory taking can occur without any changes to Plaintiff's substantive

9  property rights.  Indeed, the doctrine of regulatory taking was intended for regulations that are

10  "functionally equivalent" to physical takings where the government "appropriates private property

11  or ousts the owner from his domain."  *Lingle*, 544 U.S. at 539.  The City Defendants' abatement

12  letter and "ultimatum" (FAC ¶¶ 52–56) fall short of this constitutional standard, in both degree

13  and kind.

14    Second, even if the City Defendants had initiated formal nuisance abatement proceedings,

15  it is well-established that "the government owes a landowner no compensation for requiring him

16  to abate a nuisance on his property, because he never had a right to engage in the nuisance in the

17  first place."  *Cedar Point*, 141 S. Ct. at 2079.  Plaintiff's opposition repeats on several occasions

18  that Plaintiff's Lounge was not responsible for the alleged nuisance activities in the Parking Lot.

19  Opp. City Mot. 13.  This point may be relevant to a nuisance abatement action but is less pertinent

20  to a § 1983 action for regulatory takings.  The Takings Clause does not "require[] compensation

21  whenever the State asserts its power to enforce" nuisance abatement.  *Keystone Bituminous Coal*

22  *Ass'n v. DeBenedictis*, 480 U.S. 470, 492 (1987).  This principle applies even if the City

23  Defendants were mistaken as to the source of the nuisance.  *See Sansotta v. Town of Nags Head*,

24  724 F.3d 533, 541 (4th Cir. 2013) ("By acting to abate *what it believed* was a nuisance, the Town

25  simply kept the Owners from using their property in a way that was prohibited by law. . . .  The

26  Town's actions to abate a nuisance were *reasonable—if mistaken—uses of its police power* that

27  did nothing to deprive the Owners of any property right, even if the cottages were rendered

28  Case No.: 5:20-cv-08808-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFS.' RULE 12 MOTIONS

United States District Court
Northern District of California

valueless.") (emphasis added).  Notably, Plaintiff's opposition does not discuss this relationship between regulatory takings and nuisance abatement.  In short, Plaintiff has failed to demonstrate why the City Defendants' nuisance abatement efforts constitute a regulatory taking, as opposed to a regular exercise of the City's police power.

Because the FAC has failed to allege an actual deprivation of Plaintiff's property interests or indicate why City Defendants' nuisance abatement efforts constitute regulatory takings, the Court will GRANT City Defendants' motion to dismiss the Sixth Claim for regulatory takings. Furthermore, because "[c]ourts have consistently held that a State need not provide compensation when it diminishes or destroys the value of property by . . . abating a public nuisance," *Keystone*, 480 U.S. at 492 n.22, this claim is DISMISSED WITHOUT LEAVE TO AMEND to the extent that Plaintiff seeks to premise his regulatory takings claim on City Defendants' nuisance abatement efforts.  However, the Court will permit Plaintiff LEAVE TO AMEND if he can plead a regulatory taking claim under a different theory.

### 3.      California Takings Clause

In addition to his two federal takings claims, Plaintiff also seeks injunctive relief under the California takings clause.  FAC ¶¶ 120–22.

Other than the fact that the California takings clause "protects a somewhat broader range of property values than does the corresponding federal provision," the Supreme Court of California has construed the federal and California takings clauses congruently and considered relevant decisions from the United States Supreme Court, in addition to its own precedent.  *San Remo Hotel L.P. v. City and Cnty. of San Francisco*, 27 Cal. 4th 643, 664 (2002).  The Court's analysis of the FAC's physical and regulatory takings claims do not turn on the property interest protected; Defendants do not dispute that Plaintiff maintains constitutionally cognizable property interests in the Lease Agreement and the Permit.  Accordingly, the Court's analysis above applies with equal force to Plaintiff's California takings clause claim.

The Seventh Claim asserting violations of the California Constitution's takings clause is DISMISSED WITH LEAVE TO AMEND.

United States District Court
Northern District of California

### F.      Equal Protection

Plaintiff brings multiple equal protection claims under different theories of protected class. The Eighth Claim alleges violations of Plaintiff's Equal Protection rights based on his membership in the following classes: (1) businesses that attract predominantly Black customers and (2) businesses owned by minority persons.  FAC ¶¶ 124–25.  The Ninth Claim asserts Equal Protection violation based on a "class of one" theory.  *Id.* ¶¶ 134–35.  And the Tenth Claim asserts an equal protection violation under the California Constitution, seeking injunctive relief.  *Id.* ¶¶ 138–39.  The Court addresses each theory in turn.

#### 1.      Membership in a Protected Class

"The first step in equal protection analysis is to identify the [defendant's] classification of groups."  *Country Classic Dairies, Inc. v. State of Mont., Dep't of Com. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988).  Here, Plaintiff has identified two groups that City Defendants allegedly discriminated against: (1) minority-owned businesses and (2) businesses that attract predominantly Black customers.  FAC ¶ 124.

"A government entity has discretion in prosecuting its criminal laws, but enforcement is subject to constitutional constraints."  *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007).  To succeed on a claim for a violation of the Equal Protection clause, Plaintiff must show that Defendants' enforcement (1) had a discriminatory effect and (2) was motivated by a discriminatory purpose.  *Id.* (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)).  Enforcement may include "actual or threatened arrests, searches and temporary seizures, citations, and other coercive conduct by the police."  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 920 (9th Cir. 2012).  "Discriminatory effect" requires a showing that members of a protected class were subjected to the conduct complained of while other similarly situated individuals outside the protected class were not.  *See United States v. Armstrong*, 517 U.S. 456, 465 (1996). "Discriminatory purpose" requires the Plaintiff to show that Defendants "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Wayte*, 470 U.S. at 610.

1    <u>Minority-Owned Businesses</u>: Plaintiff has alleged that "at least two other business owners

2    of Muslim Middle-Eastern descent and his customers and employees in the City have also

3    experienced racial profiling, discrimination, and/or selective enforcement by SJPD."  FAC ¶ 126.

4    This allegation is impermissibly vague, as there are no other details regarding what alleged

5    conduct or selective enforcement these other "similarly situated" individuals have experienced.

6    For instance, there are no allegations that these other business owners were also subjected to SJPD

7    welfare checks, permit enforcement, nuisance abatement, occupancy restrictions, or any of the

8    other enforcement actions Plaintiff enumerates at FAC ¶ 127.  Without those allegations, the Court

9    cannot reasonably infer that the FAC has alleged the requisite "discriminatory effect."

10       More critically, however, Plaintiff appears to plead himself out of this specific Equal

11   Protection claim through more specific and seemingly conflicting allegations elsewhere in the

12   FAC.  Specifically, he alleges that other hookah lounges in the downtown San Jose area that were

13   owned and operated by individuals of Middle Eastern descent were "*not required* to obtain special

14   use permits, cited for failure to do so, or subjected to shrinking occupancy violations."  FAC ¶ 136

15   (emphasis added).  The fact that other Middle Eastern owned hookah lounges were *not* subjected

16   to the complained of conduct significantly undermines any inference that City Defendants'

17   enforcement was motivated by a "discriminatory purpose" against minority-owned or even

18   Muslim-owned businesses.  In short, Plaintiff has failed to plead an Equal Protection claim based

19   on a class of minority-owned businesses.

20       <u>Businesses with Predominantly Black Customers</u>: The FAC also claims that City

21   Defendants discriminated against "businesses that attract predominantly Black customers."  FAC ¶

22   124.  Plaintiff, however, has not alleged anything about the clientele of other "similarly situated"

23   businesses.  There are also no allegations about other businesses that also attract predominantly

24   Black customers or other businesses that attract predominantly non-Black customers.  Moreover,

25   Plaintiff has not presented any case law authority that supports his proposed class or a class of

26   "similarly situated" businesses.  *See* Opp. City Mot. 17–18; *cf. Freeman v. City of Santa Ana*, 68

27   F.3d 1180, 1187 (9th Cir. 1995) (noting that district court rejected an Equal Protection class

28   Case No.: 5:20-cv-08808-EJD

definition based on the "national origin of [plaintiff's] bar's patrons").

Because the FAC has failed to plausibly allege facts regarding other similarly situated businesses with respect to both of Plaintiff's class definitions, the Court is unable to assess whether Plaintiff has sufficiently alleged discriminatory effect or discriminatory purpose. Accordingly, Plaintiff's Equal Protection claim based on City Defendants' alleged discrimination against certain groups of businesses is DISMISSED.  Because the Court finds that the FAC's allegations are insufficiently pled, further factual pleadings could conceivably cure these deficiencies.  The Court, therefore, shall grant Plaintiff LEAVE TO AMEND this claim.

### 2. Class-of-One

In addition to alleged being discriminated as a business owner, Plaintiff also asserts an Equal Protection claim based on a class-of-one theory.  FAC ¶¶ 133–136.  In their Motion, City Defendants state the legal standard for a class-of-one claim but otherwise do not marshal a substantive challenge to the FAC's allegations for this claim.

The Supreme Court has recognized that Equal Protection claims may be brought even where the plaintiff is in a "class of one," so long as the plaintiff alleges that defendants (1) intentionally (2) treated her differently from others similarly situated, (3) without a rational basis for the difference in treatment.  *See Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *see also Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 602 (2008) ("[W]hen it appears that an individual is being singled out by the government, the specter of arbitrary classification is fairly raised, and the Equal Protection Clause requires a 'rational basis for the difference in treatment.'").  Construing all factual allegations in Plaintiff's favor, the Court finds that the FAC has sufficiently alleged the elements required to state an Equal Protection class-of-one claim.

First, the Court finds that the FAC has alleged that Plaintiff was treated differently from others similarly situated.  The Ninth Circuit has held a class-of-one plaintiff must be "similarly situated to the proposed comparator *in all material respects*."  *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022) (emphasis added).  Although this is a considerable burden,

United States District Court
Northern District of California

Plaintiff has satisfied it here.  To begin, because much of the City Defendants' selective enforcement pertained to late-night nuisance activity in the adjacent Parking Lot that was allegedly unfairly attributed to the Lounge, the most relevant dimension for comparator businesses would be their proximity to the Parking Lot and hours of operation.  On this point, the FAC alleges that other businesses that were "adjacent to, had rear entrances opening onto, or were otherwise in the vicinity of the VTA Parking Lot" were not required by SJPD officers to monitor, provide security for, or otherwise held responsible for the activity in the Parking Lot.  FAC ¶ 43. Furthermore, the FAC more specifically alleges that two establishments—a gentlemen's club and a bar—operated past midnight in the proximity and were not subject to the same enforcement activities that the Lounge was.  *Id.* ¶ 135.  On a different dimension of similarity, Plaintiff also alleges that other hookah lounges owned and operated by individuals of Middle Eastern descent— but not necessarily contiguous to the Parking Lot—were *not* subject to the City Defendants' enforcement.  *Id.* ¶ 136.  Especially in the absence of City Defendants' direct opposition,[4] the Court finds that these allegations sufficiently identify comparator businesses that are similarly situated to Plaintiff and his Lounge in all material respects but which were not subjected to similar enforcement activity.

Second, the Court finds that Plaintiff has alleged sufficient facts to reasonably infer that the City Defendants' differential treatment was intentional and not accidental.  A plaintiff need not allege that defendants acted with "subjective ill will," but merely that they intended to treat the plaintiff differently.  *Gerhart*, 637 F.3d at 1022.  Here, the FAC alleges that City Defendants engaged in a series of enforcement activities, ranging from fluctuating occupancy restrictions by the SJFD, enhanced late-night permit enforcement, and a cease-and-desist letter for nuisance activity in an adjacent parking lot.  *See supra* Sections I.A–D.  Moreover, the FAC alleges that SJPD communicated with Plaintiff's landlord Swenson, specifically about "the tenant issues going

---

[4] At the hearing, counsel for City Defendants indicated that the SJPD did, in fact, speak with neighboring businesses regarding the Parking Lot's nuisance activity.  The Court, however, must assume the truth of the FAC's allegations in resolving a Rule 12(b)(6) motion to dismiss.

United States District Court
Northern District of California

1   on at your property," just a few months before the City Defendants accused the Lounge of

2   maintaining a public nuisance and Swenson notifying Plaintiff of eviction.  FAC ¶¶ 42, 52, 54.

3   When viewed in conjunction with the allegations that other similarly situated businesses did not

4   receive such treatment and drawing all reasonable inferences in Plaintiff's favor, the Court finds

5   that the FAC has plausibly alleged that City Defendants acted intentionally in selecting Plaintiff

6   and his Lounge for these enforcement actions.  Put differently, it would be a remarkable

7   coincidence—indeed, an implausible one—that the City Defendants just happened to separately

8   enforce occupancy restrictions, late-night permit requirements, and nuisance restrictions against

9   this establishment all within a two-year period, despite the fact that a hookah lounge had operated

10  on the same premises for fourteen years prior without similar treatment.  FAC ¶¶ 23, 29.

11      The Court recognizes that certain governmental actions are by their nature discretionary

12  and involve a "vast array of subjective, individualized assessments," such that it would not be a

13  "violation of equal protection when one person is treated differently from another, because doing

14  so is an accepted consequence of the discretion granted."  *Cuviello v. City of Belmont*, 2023 WL

15  4915066, at *10 (N.D. Cal. July 31, 2023) (quoting *Engquist*, 553 U.S. at 603–04 (citing example

16  of traffic officer's discretion in issuing tickets on a highway where people often drive above the

17  speed limit)).  However, this is not an isolated incident where City Defendants noticed and cited

18  an instance of the Lounge's non-compliance; instead, the FAC alleges a series of efforts over the

19  course of two years whereby the SJPD, the SJFD, and the City Attorney's Office approached the

20  Lounge for three uncorrelated issues (occupancy limits, late-night operations, and nearby nuisance

21  activity).  Given the facts as alleged, the Court does not find that City Defendants' actions are the

22  type that would be subject to discretionary enforcement akin to issuing one-time speeding tickets.

23      Third, the Court cannot determine from the FAC or City Defendants' Motion that there

24  exists a rational basis for treating Plaintiff and the Lounge differently from other similarly situated

25  businesses.  For a class-of-one claim, the "rational basis" prong "turns on whether there is a

26  rational basis for the *distinction*, rather than the underlying government *action*."  Gerhart, 637

27  F.3d at 1023 (italics in original).  The FAC alleges that there is "no permissible justification for

28  Case No.: 5:20-cv-08808-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFS.' RULE 12 MOTIONS

United States District Court
Northern District of California

1    Defendants' actions targeting the Business," FAC ¶ 135, and City Defendants do not identify a

2    rational basis for the distinction in their briefing.  At most, City Defendants contend that the

3    "conduct described in the FAC was rationally related to a legitimate public purpose."  City Mot.

4    7–8.  This point, however, misses the mark.  The "rational basis" inquiry does not ask why the

5    City Defendants reduced the Lounge's occupancy, required the Lounge to obtain a special use

6    permit, or sought to address nearby nuisance activity.  Rather, the inquiry is why the City

7    Defendants directed such enforcement at the Lounge as opposed to other similarly situated

8    businesses.  To the latter point, City Defendants raise no argument, and the Court may not draw

9    any inferences in their favor on a Rule 12(b)(6) motion.  Accordingly, the Court finds that the City

10   Defendants' differential treatment towards Plaintiff is without rational basis.

                                                    * * *

12       To summarize, the FAC has alleged facts from which the Court can reasonably infer that

13   Plaintiff was treated differently from other similarly situated business owners, that this treatment

14   by the City Defendants was intentional, and that there was no rational basis for the differential

15   treatment.  Accordingly, Plaintiff has sufficiently stated a claim for an Equal Protection violation

16   based on a class-of-one theory.  However, because the individual City Defendants have asserted

17   qualified immunity for their actions, the Court will proceed to the second prong of the qualified

18   immunity analysis: whether City Defendants' conduct "violate[d] clearly established statutory or

19   constitutional rights of which a reasonable person would have known."  *Pearson*, 555 U.S. at 231.

20                    **3.    Clearly Established Law**

21       With respect to the second qualified immunity prong, "[t]he relevant, dispositive inquiry in

22   determining whether a right is clearly established is whether it would be clear to a reasonable

23   officer that his conduct was unlawful in the situation he confronted."  *Gerhart*, 637 F.3d at 1024

24   (quoting *Saucier*, 533 U.S. at 202).  A plaintiff's right can be "clearly established in a novel

25   factual situation, so long as the existing law gives the defendants 'fair warning' that their actions

26   are unconstitutional."  *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

27       The Court begins by remarking that, as a general matter, the Equal Protection right

United States District Court
Northern District of California

1    underlying the class-of-one theory has indeed been well established since the Supreme Court's

2    2000 decision in *Olech*.  *See Gerhart*, 637 F.3d at 1025 (rejecting qualified immunity and finding

3    that the "constitutional right not to be intentionally treated differently than other similarly situated

4    property owners without a rational basis was clearly established" in the *Olech* decision).  Although

5    not available at the time of City Defendants' conduct, a recent Ninth Circuit decision remarked

6    that the Court of Appeals has "consistently read *Olech* broadly as clearly establishing the right to

7    be free from differential treatment by the state without a rational basis.  And this reading accords

8    with the broader principle of qualified immunity, which is intended to shield officers from liability

9    where a reasonable person would not have known the alleged acts violate a constitutional right."

10   *Ohana Control Sys., Inc. v. City & Cnty. of Honolulu*, 2023 WL 4199610, at *1 (9th Cir. June 26,

11   2023) (citations omitted) (collecting cases); *see also Hardesty v. Sacramento Metro. Air Quality*

12   *Mgmt. Dist.*, 2016 WL 3213553, at *27 (E.D. Cal. June 9, 2016) ("[T]he Supreme Court had

13   clearly confirmed that the Equal Protection Clause prohibits government officers from

14   intentionally and arbitrarily treating a person differently than others in the same situation.").

15   Moreover, the class-of-one claim alleged here involves differential treatment based upon land use

16   and permit issues, which are factually analogous to the easement demanded in *Olech*, 528 U.S. at

17   563, and the selective permit enforcement at issue in *Gerhart*, 637 F.3d at 1022.

18           However, "clearly established" law may not be defined at a high level of generality,

19   *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), and it must be "particularized to the facts of the

20   case."  *White v. Pauly*, 580 U.S. 73 (2017).  The Court, therefore, will evaluate whether qualified

21   immunity shields each individual City Defendant's conduct, such that the particular individual

22   officer had "fair warning" that their actions would be unconstitutional.

23           Blage Zelalich:  Defendant Zelalich is the San Jose Downtown Manager, and the FAC

24   alleges that she attended the meeting with Plaintiff on December 18, 2019, to resolve the

25   perceived public nuisance issues on the Parking Lot.  FAC ¶¶ 55–56.  The FAC, however, does

26   not attribute any specific conduct to Zelalich other than her attendance at this meeting, *id.*, and

27   otherwise contains no further allegations of her conduct.  Given the sparsity of the allegations

28   Case No.: 5:20-cv-08808-EJD
     **ORDER GRANTING IN PART AND DENYING IN PART DEFS.' RULE 12 MOTIONS**

United States District Court
Northern District of California

against Zelalich, the Court cannot determine that her attendance at the December 18 meeting was a "clearly established" violation of Plaintiff's Equal Protection rights. Accordingly, the Ninth Claim for class-of-one equal protection is DISMISSED as to Defendant Zelalich on the basis of qualified immunity with LEAVE TO AMEND.

Paul Messier: Defendant Messier is an SJPD lieutenant, and the FAC alleges that he communicated with the VTA regarding a meeting with Plaintiff's landlord Swenson. FAC ¶ 42. There are no other allegations attributed to Officer Messier; indeed, the FAC does not even allege whether he had actually met with Swenson. The mere act of communicating with a VTA representative who "suggested to Messier that Plaintiff should take responsibility for activity in the VTA Parking Lot," *id.*, does not allege conduct that is "clearly established" to violate Plaintiff's equal protection rights. The Ninth Claim is, therefore, DISMISSED WITH LEAVE TO AMEND as to Defendant Messier on the basis of qualified immunity.

Rick Galea: Defendant Galea is an SJPD sergeant and appears frequently throughout the FAC. Specifically, the FAC alleges that Officer Galea was one of the first SJPD officers who raised the Parking Lot issues with Plaintiff (FAC ¶ 32), attributed the nuisance activity to the Lounge (*id.* ¶ 33), instructed Plaintiff to hire security guards and compile customer profiles of customers in "urban dress" (*id.* ¶¶ 33–34), informed Plaintiff that the Lounge's occupancy limits must be updated and reduced to 14 people (*id.* ¶ 47), accompanied the SJFD inspector in his inspection of the Lounge (*id.*), and attended the meeting on December 18, 2019, between Plaintiff and the City Attorney's Office (*id.* ¶¶ 55–56). Given the significant allegations regarding Officer Galea's multiple and repeated interactions with Plaintiff on various compliance issues, the Court finds that Officer Galea would have had "fair warning" that his conduct could be infringing Plaintiff's equal protection rights against intentional and arbitrary differential treatment. Accordingly, the Court DENIES the motion to dismiss the Ninth Claim against Officer Galea.

Leo Prescott: Defendant Prescott is an SJPD sergeant and also frequently appears in the FAC, often in the same paragraph as Officer Galea's allegations. The FAC alleges that Officer Prescott repeatedly instructed Plaintiff to monitor the Parking Lot and entered the Lounge on

United States District Court
Northern District of California

1    multiple occasions to enforce the Permit, clear out patrons, and conduct welfare checks.  FAC

2    ¶ 40.  Although the allegations of Officer Prescott's conduct are less comprehensive than those of

3    Officer Galea's, the Court finds that the FAC has sufficiently alleged facts that Officer Prescott

4    would have had "fair warning" about his conduct.  In particular, Officer Prescott is alleged to be

5    the officer who would most often engage in "welfare checks" and had regular discussions with

6    Plaintiff to monitor the Parking Lot activities.  *Id.*  If the other allegations in the FAC are taken as

7    true, as the Court must, Officer Prescott allegedly engaged in repeated enforcement against the

8    Lounge, while declining to subject other nearby businesses to similar enforcement.  *See supra* at

9    Section III.F.2.  This conduct as alleged would not be shielded by qualified immunity and,

10   therefore, the Court DENIES the motion to dismiss the Ninth Claim against Officer Prescott.

11          Dean Whipple:  Defendant Whipple is an inspector or fire marshal for the SJFD, and the

12   FAC alleges that he inspected the Lounge on April 26, 2019 at Plaintiff's arrangement.  FAC ¶ 47.

13   Following the inspection, Whipple issued code violations and reduced the Lounge's occupancy

14   from 199 to 49 people and informed Plaintiff that the occupancy would be increased if the

15   violations were corrected.  *Id.*  The FAC does not allege that Whipple conducted any other

16   inspections or made any further changes to the Lounge's occupancy.  Although the Court found

17   that the SJFD's fluctuating occupancy limits were part of the City Defendants' conduct that gave

18   rise to a class-of-one Equal Protection claim, *see supra* Section III.F.2., the conduct specifically

19   attributable to Whipple does not meet the threshold of a "clearly established" constitutional

20   violation.  Whipple is only alleged to have inspected the Lounge once at Plaintiff's own request.

21   The Court cannot conclude that Whipple would have had any "fair warning" that this single

22   inspection and subsequent citations at Plaintiff's invitation would violate any of Plaintiff's

23   constitutional rights.  The Ninth Claim against Defendant Whipple is DISMISSED WITH LEAVE

24   TO AMEND on the basis of qualified immunity.

25          Ray Simpson:  Defendant Simpson is the SJFD Division Manager and the SJFD official

26   who was most involved with the Lounge's shifting occupancy limits.  Specifically, the FAC

27   alleges that Simpson inspected the Lounge on May 2 and August 20, 2019, and he was responsible

28   Case No.: 5:20-cv-08808-EJD

ORDER GRANTING IN PART AND DENYING IN PART DEFS.' RULE 12 MOTIONS

for the Lounge's occupancy limit fluctuating between 49 and 160 people.  FAC ¶¶ 48–50.

Notably, Simpson had informed Plaintiff that the Lounge's occupancy reduction was because the

Lounge did not have a rear exit and therefore did not have "legal access" to the Parking Lot.  *Id.*

¶ 50.  Plaintiff alleges, however, that the SJFD "ha[d] not issued violations for lack of rear exit due

to lack of legal access to the VTA Parking Lot to any other similarly situated businesses operating

in the vicinity of the Business whose rear exits open to the VTA Parking Lot."  *Id.* ¶ 51.

Accepting these allegations as true, the Court finds that Defendant Simpson's alleged differential

treatment of the Lounge—as compared to other businesses that are contiguous to the Parking

Lot—would violate Plaintiff's "clearly established" equal protection rights.  The Court, therefore,

DENIES City Defendants' motion to dismiss the Ninth Claim as to Defendant Simpson.

* * *

Based on the foregoing, the Court finds that Plaintiff has failed to allege an Equal

Protection claim based on his membership in a protected class but has alleged an Equal Protection

claim based on a class-of-one theory against the City Defendants.  Among the individual City

Defendants, the Court finds that the alleged actions by Defendants Zelalich, Messier, and Whipple

are shielded by qualified immunity.  However, the conduct of Defendants Galea, Prescott, and

Simpson do *not* receive qualified immunity.

Accordingly, City Defendants' motion to dismiss the Eight Claim for Equal Protection is

GRANTED; the Claim is DISMISSED WITH LEAVE TO AMEND as to all City Defendants.

City Defendants' motion to dismiss the Ninth Claim based on the class-of-one theory is

GRANTED IN PART and DENIED IN PART.  The Ninth Claim is DISMISSED WITH LEAVE

TO AMEND as to individual Defendants Zelalich, Messier, and Whipple; the motion to dismiss

the Ninth Claim is DENIED as to individual Defendants Galea, Prescott, and Simpson.

Because the equal protection provisions in the California Constitution "have been

generally thought in California to be substantially the equivalent of the equal protection clause of

the Fourteenth Amendment," *Manduley*, 27 Cal. 4th at 571, the City of San Jose's motion to

dismiss the Tenth Claim for equal protection under the California Constitution is DENIED.

United States District Court
Northern District of California

### G.   *Monell* **Municipal Liability**

Although the FAC does not contain a separate claim for municipal liability against the City of San Jose, the FAC nonetheless brings the § 1983 claims against all Defendants, including the City.  *See, e.g.*, FAC ¶¶ 73, 91, 105.

As a preliminary matter, with respect to the constitutional claims that the Court has found to be inadequately pled in the FAC, those claims are also dismissed to the extent they assert municipal liability against the City of San Jose.  It is well-established that "municipalities cannot be held liable when the individual police officer has inflicted no constitutional injury."  *Yousefian v. City of Glendale*, 779 F.3d 1010, 1016 (9th Cir. 2015); *see also Bagley v. City of Sunnyvale*, 2017 WL 344998, at *13 (N.D. Cal. Jan. 24, 2017) ("Plaintiff's failure to adequately plead a claim against Officer Lima means that there is no underlying constitutional violation for which Sunnyvale can be held liable under *Monell*.").

With respect to the Ninth Claim for the violation of Plaintiff's class-of-one equal protection rights, however, Plaintiff may maintain a claim for municipal liability if he alleges "a policy, practice, or custom of the [City of San Jose that] can be shown to be a moving force behind a violation of constitutional rights."  *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  There are three ways to establish a municipality's policy: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision"; or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."  *Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005).  "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

United States District Court
Northern District of California

1    For many of the reasons already highlighted in its class-of-one intentionality analysis, the

2    Court finds that Plaintiff has sufficiently alleged that his class-of-one Equal Protection violation

3    was the product of a policy, practice, or custom by the City.  Although "[i]t is difficult to discern

4    from the caselaw the quantum of allegations needed to survive a motion to dismiss a pattern and

5    practice claim . . . where more than a few incidents are alleged, the determination appears to

6    require a fully-developed factual record."  *D.C. by & through Cabelka v. Cnty. of San Diego*, 445

7    F. Supp. 3d 869, 893 (S.D. Cal. 2020).  Here, the FAC alleges that, before Plaintiff assumed the

8    lease in 2017, a hookah lounge had operated on the same premises for a period of fourteen years

9    without any issues from the City.  FAC ¶¶ 23, 29.  The FAC also alleges that, over a two-year

10   period, the City began more strictly enforcing late night permit regulations, occupancy limitations,

11   and neighboring nuisance obligations against the Lounge.  *See supra* Sections III.F.2, III.F.3.  And

12   finally, the FAC alleges that, after Plaintiff vacated the premises, the City Defendants began

13   asking another nearby late-night establishment (Tiki Pete) to provide security for the Parking Lot,

14   even though City Defendants did *not* strictly enforce the regulations against Tiki Pete when the

15   Lounge was still in operations.  FAC ¶¶ 43–44.  Accepting these allegations as true, the Court

16   finds that the timing, frequency, and multi-pronged nature of the City Defendants' interactions

17   with Plaintiff supports a plausible inference there was a coordinated effort among the SJPD, SJFD,

18   and the City Attorney's Office to selectively enforce City regulations against the Lounge.

19   To the extent the City contends that *Monell* liability is inappropriate without alleging more

20   victims of the City-wide practice (City Mot. 14–15; City Reply 5), this argument carries limited

21   weight when applied to class-of-one equal protection violations, which necessarily impacts only

22   one plaintiff.[5]  District courts have also found *Monell* liability based upon a municipal custom or

23

24   _____

25   [5] At least one district court in California has found that municipal liability may be maintained for
     class-of-one equal protection violation, where the city attorney's office—like here—informed
     plaintiffs of municipal code violations.  *See Patel v. City of Long Beach*, 2018 WL 9536798, at *7
26   (C.D. Cal. July 18, 2018) ("Plaintiffs allege Long Beach informed them of these escalating fines
     through its City Attorney's office because they were operating the Princess Inn in violation of the
27   municipal code.  Therefore, Long Beach's City Attorney's office could be shown to be a final
     decision-maker on behalf of the city and establish municipal liability.") (citation omitted).

28   Case No.: 5:20-cv-08808-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFS.' RULE 12 MOTIONS

practice where there was only a single victim alleged but multiple incidents and violations by the municipality against the same victim.  *See, e.g.*, *Cabelka*, 445 F. Supp. 3d at 893 (rejecting municipal defendant's argument that plaintiff's "individual experience with one foster child is insufficient to support an inference of an unlawful County custom"); *Lapachet v. California Forensic Med. Grp., Inc.*, 313 F. Supp. 3d 1183, 1193 (E.D. Cal. 2018) (permitting *Monell* liability where "[p]laintiff alleges that over the course of two days, multiple County and CFMG employees failed to properly monitor his health and provide him with adequate medical treatment, despite his apparent need").  Here, Plaintiff has alleged at least three separate and uncorrelated avenues (*i.e.*, late-night permit enforcement, SJFD occupancy limits, off-presence nuisance abatement) by which City Defendants have selectively and continuously enforced regulations against him over the course of two years.  Furthermore, the FAC also alleges that, after the Lounge went out of business, the City continued its purported practice of localized Equal Protection violations against another establishment near the Parking Lot.  FAC ¶ 44.  At the present juncture, the alleged incidents permit inference of a city-wide practice or custom sufficient to "require a fully-developed factual record."  *Lemus v. Cnty. of Merced*, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*, 711 F. App'x 859 (9th Cir. 2017).

Because the FAC has plausibly alleged that Plaintiff's class-of-one Equal Protection violations resulted from the City's custom or practice of targeting a single business in the vicinity of the Parking Lot, the Court DENIES the motion to dismiss to dismiss the City as a municipal defendant for the Ninth Claim of class-of-one Equal Protection violation.  The other claims against the City of San Jose are DISMISSED WITH LEAVE TO AMEND consistent with the Court's determinations above.

## IV.    VTA DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

The FAC purports to assert all the same federal claims (*i.e.*, violations of substantive due process, procedural due process, physical takings, regulatory takings, equal protection as a member of a protected class, equal protection as a class-of-one) against the Santa Clara Valley Transit Authority and Shannon Smyth-Mendoza that the FAC asserts against City Defendants.

Case No.: 5:20-cv-08808-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFS.' RULE 12 MOTIONS

United States District Court
Northern District of California

United States District Court
Northern District of California

1  The VTA Defendants have moved under Rule 12(c) for judgment on the pleadings because

2  Plaintiff has failed to plausibly allege facts supporting their claims against them and Defendant

3  Smyth-Mendoza's conduct is entitled to qualified immunity.  VTA Mot. 1.

4  　　　Compared to the allegations against the City Defendants, the FAC contains significantly

5  fewer allegations regarding VTA Defendants' conduct.  The Court has identified a total of five

6  substantive allegations against the VTA Defendants across three paragraphs:

7  　　　1.　　The Parking Lot was owned and operated by the VTA (FAC ¶ 28);

8  　　　2.　　Defendant Smyth-Mendoza, a VTA Senior Assistant Counsel, had
　　　　　　"suggested to [a SJPD officer] that Plaintiff should take responsibility for
9  　　　　　　activity in the VTA Parking Lot" (FAC ¶ 42);

10  　　　3.　　A VTA real estate agent emailed Plaintiff's landlord that the SJPD "would
　　　　　　like to set up a meeting to assist in resolving the tenant issues going on at
11  　　　　　　your property" (FAC ¶ 42);

12  　　　4.　　Plaintiff believes that all the relevant conduct was to "convert Plaintiff's
　　　　　　building to VTA's BART Silicon Valley station" (FAC ¶ 42); and
13

14  　　　5.　　VTA never offered to provide security for the VTA Parking Lot and did not
　　　　　　offer to take responsibility for activity on the Parking Lot (FAC ¶ 45).

15  　　　As a general matter, the Courts finds that allegations of two communications, Plaintiff's

16  subject belief, and a failure to act are plainly insufficient to allege a deprivation of constitutionally

17  protected rights for purposes of 42 U.S.C. § 1983.  *See Patel*, 648 F.3d at 971 ("To succeed on a §

18  1983 claim, a plaintiff must show that . . . (2) the conduct deprived the plaintiff of a federal

19  constitutional or statutory right.").  Nowhere in his opposition does Plaintiff provide any basis or

20  legal authority for imposing direct § 1983 liability from such limited conduct.  All claims against

21  the VTA Defendants, therefore, are subject to dismissal on insufficiency grounds alone.[6]

22  　　　In defense of the FAC's allegations against the VTA Defendants, Plaintiff asserts a variety

23  of theories, none of which are availing.  First, Plaintiff seeks to hitch the VTA Defendants'

24  liability to the City Defendants' wagon, contending that the City Defendants' violations "simply

25  would not have occurred without the interference and coordination of the VTA Defendants."  *E.g.*,

26

27  [6] Individual Defendant Smyth-Mendoza is further shielded by qualified immunity to the extent
that any potential theory of constitutional violation is not "clearly established" law.

28  Case No.: 5:20-cv-08808-EJD
ORDER GRANTING IN PART AND DENYING IN PART DEFS.' RULE 12 MOTIONS

United States District Court
Northern District of California

Opp. VTA Mot. 6.  However, the FAC asserts no claim for conspiracy, nor does it contain any allegations that would permit an imputation of City Defendants' conduct onto VTA Defendants. In his opposition, Plaintiff off-handedly characterizes the VTA Defendants' actions as "conspiring" with the City or Plaintiff's landlord (Opp. VTA Mot. 11, 12, 13, 17), but none are supported by citations to the FAC's pleadings.  Second, Plaintiff appears to argue that the VTA Defendants' actions "were *ultra vires*, making their conduct unconstitutional."  Opp. VTA Mot. 9–10.  Notwithstanding that the FAC contain none of the factual allegations necessary to support such a theory, Plaintiff misunderstands and misstates the law.  Per Plaintiff's own cited case authorities and parentheticals, *ultra vires* actions are *void*, not unconstitutional *per se*.  *Id.* (citing *California Dui Laws. Ass'n v. California Dep't of Motor Vehicles*, 20 Cal. App. 5th 1247, 1264 (2018) ("[A] governmental agency that acts outside of the scope of its statutory authority acts ultra vires and *the act is void*.") (emphasis added)).  Finally, Plaintiff's opposition frequently references the VTA Defendants' failure to provide security for the Parking Lot or take responsibility for the nuisance activity.  *See, e.g.*, Opp. VTA Mot. 14–15.  However, the FAC alleges no legal duty that the VTA Defendants owed to Plaintiff and, even if such a duty was alleged, the Ninth Circuit has held that "the failure to comply with a legally required duty, without more, [cannot] give rise to a substantive due process claim."  *Murguia v. Langdon*, 61 F.4th 1096, 1108 (9th Cir. 2023).

In summary, the FAC's allegations against the VTA Defendants are factually insufficient and fail to allege the necessary legal elements.  The rhetoric and creative licenses taken by Plaintiff's opposition do not—and cannot—supply the necessary allegations to patch the FAC's factually insufficient pleadings.  Accordingly, VTA Defendants' motion for judgment on the pleadings is GRANTED.  Although the VTA Defendants have requested the Court deny leave to amend, the deficiencies above are primarily due to insufficient factual allegations, which Plaintiff represented he can supplement if granted leave to amend.  2/9/23 Hr'g Tr. 56:21–57:11. Accordingly, the Court will DISMISS all § 1983 claims against the VTA Defendants WITH LEAVE TO AMEND.

1   **V.      CONCLUSION**

2          Based on the foregoing, the Court GRANTS IN PART and DENIES IN PART

3   Defendants' Rule 12 motions, as follows:

4          1.   All Claims asserted against Defendants Creech, Dalpiaz, and Chang are

5               DISMISSED WITHOUT LEAVE TO AMEND;

6          2.   The First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Claims are

7               DISMISSED WITH LEAVE TO AMEND as to all City Defendants, including the

8               City of San Jose;

9          3.   The Ninth Claim is DISMISSED WITH LEAVE TO AMEND as to Defendants

10              Zelalich, Messier, and Whipple;

11         4.   The Motion is DENIED as to the Ninth Claim against Defendants Galea, Prescott,

12              Simpson, and City of San Jose;

13         5.   The Motion is DENIED as to the Tenth Claim against the City of San Jose; and

14         6.   All Claims asserted against the VTA Defendants are DISMISSED WITH LEAVE

15              TO AMEND.

16   Plaintiff shall file any amended complaint within twenty-one (21) days of this Order.

17          **IT IS SO ORDERED.**

18   Dated: September 20, 2023

19

20                                          _____

21                                          EDWARD J. DAVILA
                                            United States District Judge
22

23

24

25

26

27

28   Case No.: 5:20-cv-08808-EJD
     ORDER GRANTING IN PART AND DENYING IN PART DEFS.' RULE 12 MOTIONS

United States District Court
Northern District of California