1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MUSTAFA MUHMOUD,

Plaintiff,

v.

CITY OF SAN JOSE, et al.,

Defendants.

Case No.   20-cv-08808-EJD

**ORDER GRANTING IN PART AND DENYING IN PART CITY DEFENDANTS' MOTION TO DISMISS (ECF NO. 113); GRANTING VTA'S MOTION TO DISMISS (ECF NO. 114)**

Re: ECF Nos. 113, 114

Plaintiff Mustafa Muhmoud is the former owner of a small business in downtown San Jose and brings the instant § 1983 action, alleging discriminatory harassment from local officials.  On October 11, 2023, Plaintiff filed a second amended complaint following the Court's dismissal of certain claims.  *See* Second Amended Complaint ("SAC"), ECF No. 112; Order Granting in Part and Denying in Part Defendants' Rule 12 Motions ("Order"), ECF No. 111.

Defendants City of San Jose ("City"), Leo Prescott, Rick Galea, and Ray Simpson (collectively "City Defendants") and Defendant Santa Clara Valley Transit Authority ("VTA") have moved to dismiss the Second Amended Complaint under Rule 12(b)(6).  City Motion to Dismiss ("City Mot."), ECF No. 113; VTA Motion to Dismiss ("VTA Mot."), ECF No. 114.

Having carefully reviewed the relevant documents, the Court finds this matter suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b).  For the below reasons, the Court GRANTS IN PART and DENIES IN PART the City Defendants' Motion and GRANTS the VTA's Motion.

# I.     BACKGROUND

The Court set forth a detailed summary of Plaintiff's allegations in its prior order.  *See* Order 1–5.  At a high level, the SAC alleges the following: Plaintiff Mustafa Muhmoud was the owner of Shisha Hookah Lounge (the "Business") in downtown San Jose from February 2017 until September 2020 when the business ceased operations.  SAC ¶ 1.  The Business, as well as several other buildings, bordered an open-air public parking lot owned and operated by the VTA (the "Parking Lot").  *Id.* ¶¶ 23–24.  After multiple interactions with City representatives, officers from San Jose Police Department ("SJPD"), and others regarding various complaints concerning occupancy and nuisance behavior, Plaintiff ceased operations of his Business and vacated the premises based on "significant revenue loss due to reduced occupancy."  *Id.* ¶¶ 25, 58.  Plaintiff alleges that the City Defendants' and VTA's actions were motivated by a desire to shut down the Lounge and transform the area into the VTA's Silicon Valley BART station.  *Id.* ¶¶ 24, 68–69.  Plaintiff alleges that, during the relevant period, the SJPD did not ask the nearby tiki bar or gentleman's club to share responsibility for patrolling the Parking Lot and that none of those businesses were operated by persons of Middle Eastern descent.  *Id.* ¶¶ 34, 75.

The Court's Order dismissed all of Plaintiff's claims against the City Defendants except for a class-of-one theory and dismissed all claims against the VTA.  Order 37.  Plaintiff filed an amended complaint narrowing his causes of actions to three: (1) Equal Protection claim under 42 U.S.C. § 1983 based on a class of one theory against the City Defendants, (2) Equal Protection claim under California Constitution Article 1 § 7 with a request for injunctive relief against the City, and (3) a conspiracy violation under § 1983 against all Defendants.  SAC 16–18.

The City Defendants move to dismiss the third cause of action for conspiracy and the request for injunctive relief.  City Mot. 2.  VTA moves for dismissal of the sole conspiracy claim against it.  VTA Mot. 1–2.  Plaintiff filed oppositions to both motions, and Defendants replied.  Plaintiff's Opposition to City's Motion to Dismiss ("Opp. City Mot."), ECF No. 117; Plaintiff's Opposition to VTA's Motion to Dismiss ("Opp. VTA Mot."), ECF No. 116; City Reply in Support of Motion to Dismiss ("City Reply"), ECF No. 119; VTA Reply in Support of Motion to Dismiss

Case No.: 20-cv-08808-EJD
ORDER ON DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1   ("VTA Reply"), ECF No. 118.

2   ## II.   LEGAL STANDARD

3       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

4   sufficiency of claims alleged in the complaint.  Fed. R. Civ. P. 12(b)(6); *Parks School of Business,*

5   *Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal "is proper only where there is no

6   cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal

7   theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A plaintiff must "plead[] factual

8   content that allows the court to draw the reasonable inference that the defendant is liable for the

9   misconduct alleged," which requires "more than a sheer possibility that a defendant has acted

10  unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

11  U.S. 544, 570 (2007)).  The Court must "accept factual allegations in the complaint as true and

12  construe the pleadings in the light most favorable to the nonmoving party." *Manzare v. St. Paul*

13  *Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

14  ## III.   CITY DEFENDANTS' MOTION TO DISMISS

15      The City Defendants move to dismiss Plaintiff's third cause of action for conspiracy and

16  the prayer for equitable relief under California Constitution Article 1 §7.

17      ### A.   Third Cause of Action—Conspiracy Under 42 U.S.C. § 1983

18      To establish a conspiracy claim under § 1983, Plaintiff must show "(1) the existence of an

19  express or implied agreement among the defendant[s] to deprive [him] of [his] constitutional

20  rights, and (2) an actual deprivation of those rights resulting from that agreement." *Avalos v.*

21  *Baca*, 596 F.3d 583, 592 (9th Cir. 2010).  "The plaintiff must state specific facts to support the

22  existence of a claimed conspiracy." *Olsen v. Idaho State Bd. of Medicine*, 363 F.3d 916, 929 (9th

23  Cir. 2004).  A defendant's knowledge of and participation in a conspiracy may be inferred from

24  circumstantial evidence and from evidence of the defendant's actions. *Borges v. Cnty. of*

25  *Mendocino*, 506 F. Supp. 3d 989, 1000 (N.D. Cal. 2020), aff'd, No. 22-15673, 2023 WL 2363692

26  (9th Cir. Mar. 6, 2023) (citing *Gilbrook v. City of Westminster*, 177 F.3d 839, 856–57 (9th Cir.

27  1999)).

28  Case No.: 20-cv-08808-EJD
ORDER ON DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

The SAC alleges generally that all Defendants reached an agreement among themselves in September 2019 "to target Plaintiff and remove him from operating [his] Business on the Property." SAC ¶ 81. The Defendants were allegedly "acting in concert with each other and with other co-conspirators, known and unknown" and conspired to "violate Plaintiff's constitutional rights through the differential treatment of his Business from similarly situated businesses." *Id* ¶ 82. The SAC further alleges that the Defendants "committed overt acts" in furtherance of the conspiracy following the September 2019 meetings. *Id.* ¶ 83.

City Defendants argue the SAC fails to state a claim for conspiracy because Plaintiff "does not allege who conspired with whom and about what," and City Defendants insist that Plaintiff "must allege what the plan was and between whom." City Mot. 5.

Regarding the first element required to plead a conspiracy claim under § 1983—the existence of an express or implied agreement—Plaintiff has alleged in the SAC that the City Defendants and the VTA "had multiple meetings, after which they both took actions that furthered a conspiracy to deprive Mr. Muhmoud of his constitutional rights." Opp. City Mot. 5 (citing SAC ¶¶ 64, 65). These meetings, Plaintiff argues, are sufficient to demonstrate the requisite "meeting of the minds" to plead a conspiracy claim. Plaintiff has alleged the following with respect to these meetings:

- "[I]ndividuals from the City, the Sheriff's office, the VTA, Swenson, and LAZ met at least three times to discuss the VTA Parking Lot. These meetings were held in person and virtually on September 4, 2019, September 26, 2019, and November 6, 2019. At least one individual from the City was present at each of these meetings, the VTA actively participated in two of the meetings, and the VTA actually arranged one of the meetings between SJPD and Swenson." SAC ¶ 64.

- "At these meetings, individuals from the City, the Sheriff's office, the VTA, Swenson, and LAZ discussed VTA Parking Lot late-night issues and the August Incident. These late-night issues were improperly attributed to Plaintiff's Business, but Plaintiff was never invited to attend these meetings." *Id.* ¶ 65.

Plaintiff further alleges that all Defendants "reached an agreement among themselves to target Plaintiff and remove him from operating the Business on the Property," and "[t]his

Case No.: 20-cv-08808-EJD
ORDER ON DEFENDANTS' MOTIONS TO DISMISS

4

agreement between VTA Defendants and City Defendants was first reached in September 2019." SAC ¶ 81.  Plaintiff argues that these meetings were "significant" because they preceded the November 25 nuisance letter, which was the basis for Plaintiff's landlord initiating an unlawful detainer action against Mr. Muhmoud.  *Id.* ¶¶ 47–49.

As to the second element—an actual deprivation of those rights resulting from that agreement—Plaintiff describes Defendants' "scheme" to "singularly target Plaintiff's Business and render it inoperable."  SAC ¶ 67.  Plaintiff alleges that Defendant Simpson and the San Jose Fire Department imposed fluctuating occupancy levels on his Business.  *Id.* ¶¶ 41–43.  Despite Plaintiff's efforts to correct the issues identified by Defendant Simpson, the City "further reduced the approved occupancy," and Defendant Simpson indicated that "the reason for the subsequent reduction was because the Business did not have a rear exit."  *Id.* ¶¶ 44–45.  Plaintiff explained to Defendant Simpson that "he could not operate a financially viable business with a low occupancy and was working diligently with Swenson to address [the] code issues promptly."  *Id.* ¶ 67.  During the same time, Plaintiff alleges that Ron Golem from the VTA emailed Officer Messier and stated that "the VTA would not consider any requests for egress across the Property until this matter is resolved."  *Id.* ¶ 67.  Plaintiff alleges, on information and belief, that "the resolution which VTA sought was removal of Plaintiff's Business."  *Id.*  By withholding egress across Plaintiff's property "intentionally," the VTA was purportedly acting within the Defendants' broader "scheme to singularly target Plaintiff's Business and render it inoperable."  *Id.*  These "coordinated efforts to target Plaintiff" were "ultimately successful," and Plaintiff alleges that by June 2021, the Business was rendered inoperable.  *Id.* ¶¶ 69–70.  Defendants' concerted actions purportedly led to a violation of Plaintiff's "constitutional rights through the differential treatment of his Business from similarly situated businesses."  *Id.* ¶ 82.

The Court finds that the above allegations are sufficient to plead the existence of an express or implied agreement among the City Defendants to deprive Plaintiff of his constitutional rights and an actual deprivation of those rights resulting from that agreement.  The SAC presents facts alleging when the agreement was reached (during the September 2019 meetings), who was

United States District Court
Northern District of California

involved in the alleged agreement (all Defendants), and what agreement was reached (an agreement "to target Plaintiff and remove him from operating the Business on the Property"). The SAC further alleges facts regarding an actual deprivation of those rights resulting from that agreement: Plaintiff's Business was rendered inoperable after the purported differential treatment of his Business from similarly situated businesses.

These facts are sufficiently plead under *Soo Park*. There, the plaintiff was charged with and tried for murder. *Soo Park v. Thompson*, 851 F.3d 910, 915 (9th Cir. 2017). She sued a police detective, alleging that the detective orchestrated criminal charges against a witness who would have provided testimony favorable to her and that, "on information and belief, [the detective] brought about that result in collaboration with a number of Doe Defendants," thus engaging in a conspiracy to violate her civil rights. *Soo Park*, 851 F.3d at 928. The plaintiff's allegations included the following:

- "[a]fter the District Attorney received notice that [the plaintiff] planned to call Ayala as a defense witness, and after Detective Thompson's phone conversation with Ayala, Thompson and/or a Doe defendant allegedly contacted the El Segundo Police and convinced an officer to initiate charges against Ayala."

- "[t]he District Attorney then unexpectedly brought felony criminal charges against Ayala stemming from a physical dispute with Gilmore [an individual who may have actually killed the victim] approximately a year earlier."

- "[s]hortly afterwards, at [the plaintiff's] criminal hearings, Ayala declined to testify at [the plaintiff's] trial because of these pending charges and after the Deputy District Attorney threatened to 'recuse' her attorney if he did not advise her to invoke her Fifth Amendment privilege"

- "[f]ollowing Ayala's refusal to testify, the District Attorney dismissed the felony charges, and Ayala received a probationary sentence after pleading no contest to a misdemeanor charge."

*Id.*

The Ninth Circuit concluded that the plaintiff had pleaded sufficient facts to state a plausible claim for § 1983 conspiracy because she had pled sufficient specificity as noted above. Observing that "many of the relevant facts [were] known only to the defendant," the Ninth Circuit

United States District Court
Northern District of California

1    concluded that, "[w]hen the entire factual context is considered," it was clear that plaintiff

2    "nudged her claim" across the line from conceivable to plausible.  *Id.* at 928 (cleaned up)

3    (complaint alleged sufficient facts that were "suggestive" of an agreement to engage in "illegal

4    conduct").

5         Similarly here, when the entire factual context is considered, Plaintiff has alleged sufficient

6    facts that are suggestive of an agreement among City Defendants to target Plaintiff and remove

7    him from operating his Business.  *Id.* at 928.  The SAC alleges that, before Plaintiff assumed the

8    lease in 2017, a hookah lounge had operated on the same premises for a period of fourteen years

9    without any issues from the City.  SAC ¶¶ 19, 26.  The SAC also alleges that, over a two-year

10   period, the City began more strictly enforcing late night permit regulations, occupancy limitations,

11   and neighboring nuisance obligations against the Lounge.  *Id.* ¶¶ 27, 29, 33 42, 45.  And finally,

12   the SAC alleges that, after Plaintiff vacated the premises, the City Defendants began asking

13   another nearby late-night establishment (Tiki Pete) to provide security for the Parking Lot, even

14   though City Defendants did not strictly enforce the regulations against Tiki Pete when the Lounge

15   was still in operations.  SAC ¶¶ 39–40.  Given this history of Plaintiff's interactions with City

16   Defendants as alleged, and drawing all reasonable inferences in Plaintiff's favor, the Court finds

17   that the SAC has plausibly alleged facts to support a conspiracy claim against the City Defendants.

18        The City Defendants take issue that the SAC is "silent as to any details of an alleged

19   agreement."  City Reply 3.  But the pleading standard is relaxed for conspiracy claims when, as

20   here, "the relevant facts are known only to the [D]efendant[s]."  *Soo Park*, 851 F.3d at 928.

21   Defendants also argue that the "more conceivable explanation" is that Plaintiff "ended up in this

22   situation due to his violation of several laws involving several City departments."  City Opp. 4.

23   But at this stage, the Court is required to "accept factual allegations in the complaint as true and

24   construe the pleadings in the light most favorable to the nonmoving party."  *Manzare*, 519 F.3d at

25   1031.  Although it may be conceivable that that Defendants were indeed "carrying out their

26   required duties" as Defendants contend (City Opp. 4), equally plausible at this stage—when

27   construing all allegations as true—is that Defendants were engaging in the unlawful scheme

28   Case No.: 20-cv-08808-EJD
     ORDER ON DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1    Plaintiff describes.

2        Accordingly, the Court finds that Plaintiff has sufficiently pleaded a conspiracy claim

3    against the City Defendants.  The City Defendants' motion to dismiss Plaintiff's third cause of

4    action for conspiracy is therefore DENIED.

5        **B.    Equitable Relief**

6        The City Defendants also move to dismiss Plaintiff's request for injunctive relief on the

7    basis that Plaintiff lacks standing to seek equitable relief.  City Mot. 5–6.  In support, the City

8    Defendants point to Plaintiff's lack of allegations of any continuing contact or likely future

9    connection between Plaintiff and the City which would establish standing.  *Id.* at 6.

10       Plaintiff contends that the City Defendants are precluded from challenging standing under

11   the "law of the case" doctrine because the "Court declined to dismiss Mr. Muhmoud's claim for

12   equal protection under the California Constitution, which the Court acknowledged seeks

13   injunctive relief."  Opp. City Mot. 7.

14       As an initial matter, the Court's prior Order did not reach the City's arguments on this

15   issue.  Nevertheless, the Court is not now precluded from considering it.  *Omar v. Sea-Land Serv.,*

16   *Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under Fed.

17   R. Civ. P. 12(b)(6)").

18       Plaintiff's second cause of action for violations of "the equal protection guarantees of

19   Article I, § 7 of the California Constitution" seeks only injunctive relief.  SAC ¶¶ 78–79.

20   Specifically, Plaintiff requests that the Court award injunctive relief "to enjoin [Defendants] from

21   the conduct complained of herein and similar conduct that is discovered during the course of

22   litigation, including enjoining and prohibiting Defendants from treating Plaintiff's Business or any

23   future businesses differently from any other similarly situated businesses."  SAC 18 (Prayer for

24   Relief).

25       "A plaintiff must demonstrate constitutional standing separately for each form of relief

26   sought."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Friends of*

27   *the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 185 (2000)).  A plaintiff seeking

28   Case No.: 20-cv-08808-EJD
     ORDER ON DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

United States District Court
Northern District of California

1   injunctive relief must demonstrate a "real or immediate threat that they will be wronged again—a

2   likelihood of substantial and immediate irreparable injury." *City of Los Angeles v. Lyons*, 461

3   U.S. 95, 111 (1982) (quotation omitted).  "A plaintiff threatened with future injury has standing to

4   sue if the threatened injury is certainly impending, or there is a substantial risk the harm will

5   occur." *Index Newspapers LLC v. United States Marshals Serv.*, 977 F.3d 817, 825 (9th Cir.

6   2020) (quotations omitted).  "Past exposure to illegal conduct does not in itself show a present

7   case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present

8   adverse effects." *Id.* (quoting *City of Los Angeles*, 461 U.S. at 102).

9          Here, Plaintiff's allegations center around Defendants' past actions regarding Plaintiff and

10   his Business.  He seeks to enjoin Defendants from treating Plaintiff's Business "or any future

11   businesses" differently from any other similarly situated businesses, but Plaintiff has not alleged

12   that he intends to open another business.  Nor has he alleged facts demonstrating any other

13   likelihood of future harm.  Without any allegations of continuing, present adverse effects, Plaintiff

14   lacks standing to pursue equitable relief.  *Haynie v. Harris*, No. C10-01255 SI, 2014 WL 899189,

15   at *5 (N.D. Cal. Mar. 4, 2014) (dismissing claim for injunctive relief for lack of standing where

16   plaintiff's "single arrest [was] not sufficient to demonstrate a real and immediate threat because

17   past exposure to illegal conduct alone is not enough to meet the standard for injunctive relief" and

18   rejecting as "pure speculation" claim that plaintiff "will have similar future encounters with law

19   enforcement officer").

20          Accordingly, the Court will DISMISS Plaintiff's second cause of action and Plaintiff's

21   request for injunctive relief.  The Court finds that amendment is not futile, and Plaintiff will be

22   given leave to amend to the extent he can plausibly plead facts to establish standing for this claim–

23   –namely, facts demonstrating a likelihood of future harm.

24   **IV.   VTA'S MOTION TO DISMISS**

25          The VTA moves to dismiss Plaintiff's claim for conspiracy against the VTA for (1) failing

26   to adequately plead the conspiracy claim, and (2) failing to plead *Monell* liability.  VTA Mot. 5–

27   6.  Because the Court finds that Plaintiff has failed to adequately plead *Monell* liability, for the

28   Case No.: 20-cv-08808-EJD
ORDER ON DEFENDANTS' MOTIONS TO DISMISS

1    reasons stated below, the Court need not reach arguments regarding the substance of the

2    conspiracy claims against the VTA.

3         A.    *Monell* **Liability**

4         The VTA argues that Plaintiff's conspiracy claim against the VTA, a governmental entity,

5    fails because Plaintiff has not alleged a VTA policy or custom inflicting Plaintiff's claimed injury

6    under § 1983.  VTA Mot. 6.

7         Section 1983 provides a cause of action against any "person" who, under color of law,

8    deprives any other person of rights, privileges, or immunities secured by the Constitution of the

9    United States.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 695 (1978).

10   Although a municipality qualifies as a "person" under § 1983, a municipality cannot "be held

11   liable under § 1983 on a respondeat superior theory."  *Id.* at 691.  However, "liability may attach

12   where the municipality itself causes the constitutional violation through the execution of an

13   official policy, practice or custom."  *Fairley v. Luman*, 281 F.3d 913, 916 (9th Cir. 2002)

14   (emphasis in original).  A *Monell* claim for § 1983 liability against a public entity may be stated in

15   one of three circumstances: 1) a municipal employee committed the alleged constitutional

16   violation "pursuant to a formal governmental policy or longstanding practice or custom which

17   constitutes the standard operating procedure of the local governmental entity;" 2) the individual

18   who committed the constitutional violation was an official with "final policy-making authority and

19   that the challenged action itself thus constituted an act of official government policy;" or 3) the

20   plaintiff may demonstrate that "an official with final policy-making authority ratified a

21   subordinate's unconstitutional decision or action and the basis for it."  *Gillette v. Delmore*, 979

22   F.2d 1342, 1346 (9th Cir. 1992).

23        In the absence of an express official policy, a plaintiff may allege municipal liability

24   through a custom or practice.  42 U.S.C. § 1983; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127

25   (1988).  A municipal's policy may be one of action or inaction: "A policy of action is one in

26   which the government body itself violates someone's constitutional rights, or instructs its

27   employees to do so; a policy of inaction is based on a government body's failure to implement

28   Case No.: 20-cv-08808-EJD
ORDER ON DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1   procedural safeguards to prevent constitutional violations." *Jackson v. Barnes*, 749 F.3d 755, 763

2   (9th Cir. 2014) (quotations and citation omitted). Thus, a municipal entity may be liable under

3   § 1983 for inaction, namely, a policy or custom of inadequate training, supervision, or discipline

4   its employees. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989); *see Davis v. City of*

5   *Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989).

6           However, it is not enough for a plaintiff to identify a local government's custom or policy

7   that caused his injury; plaintiff must also demonstrate "that the custom or policy was adhered to

8   with 'deliberate indifference to the constitutional rights of [plaintiff].'" *Castro v. Cnty. of Los*

9   *Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (citing *Canton*, 489 U.S. at 392). Liability attaches

10   to a claim that arises under failure to supervise or train only where the failure to train or supervise

11   "amounts to a 'deliberate' or 'conscious' choice" by a government entity. *Flores v. Cnty. of Los*

12   *Angeles*, 758 F.3d 1158 (9th Cir. 2014). The inquiry is whether the training or supervision is

13   adequate, "and if it is not, the question becomes whether such inadequate training [or supervision]

14   can justifiably be said to represent city policy." *Canton*, 489 U.S. 378 at 390; *see also Dougherty*

15   *v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) ("[A] failure to supervise that is sufficiently

16   inadequate may amount to deliberate indifference.") (quotations and citations omitted).

17           The Court finds that Plaintiff has failed to plead any facts that the VTA caused the alleged

18   constitutional violation through the execution of an official policy, practice, or custom of the

19   VTA. Plaintiff argues that he has alleged facts "that demonstrate a custom or practice of the VTA

20   engaging with the City and local businesses in its operation of the particular VTA Parking Lot."

21   VTA Opp. 8. Specifically, Plaintiff argues, the SAC alleges a "consistent practice of cooperation

22   with the City with respect to the City's targeting of Mr. Muhmoud and the Business." VTA Opp.

23   9 (citing SAC ¶¶ 30, 63–70). Plaintiff further contends that "[t]hrough at least two VTA agents,

24   Shannon Smyth-Mendoza and Ron Golem, the VTA worked with multiple representatives of the

25   City's departments over the course of several months and through multiple meetings to shift

26   responsibility for the security of the VTA's own parking lot away from the VTA and onto Mr.

27   Muhmoud and the Business." *Id.* These "repeated actions by the VTA," Plaintiff argues, were "a

28   Case No.: 20-cv-08808-EJD
    ORDER ON DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1    moving force behind the City's violation of Mr. Muhmoud's equal protection rights."

2    VTA Opp. 9.

3        "[T]he allegations concerning the existence and content of a policy must satisfy the

4    requirements of *Iqbal*." *Inman v. Anderson*, 294 F. Supp. 3d 907, 921 (N.D. Cal. 2018).

5    "Multiple courts have applied this standard in the *Monell* context and found vague assertions of

6    municipal policies to be insufficient." *Id.*  In *Inman*, the court dismissed *Monell* claims where the

7    complaint alleged that the county employee "set investigative policy for the County," "made

8    deliberate choices with respect to the final actions ordered in the investigation of plaintiff," and

9    "the County was the moving force behind Plaintiff's damages." *Id.* at 922 (cleaned up).  Because

10   the complaint was "completely devoid of any facts or details about the actual content of the

11   investigatory policy that purportedly was the 'moving force' behind the alleged constitutional

12   injuries that Plaintiff suffered at the hands of the City Officers," plaintiff's above allegations failed

13   to state a *Monell* claim.  *Id.*

14       The allegations in support of Plaintiff's *Monell* claim against the VTA are even less

15   detailed than those in *Inman*.  Plaintiff has not identified any VTA policy, practice, or custom—

16   let alone described the content of that policy. *C.f. Mateos–Sandoval v. Cty. of Sonoma*, 942

17   F.Supp.2d 890, 899 (N.D. Cal. 2013) (*Monell* allegations sufficient where plaintiff "specif[ied] the

18   content of the policies, customs, or practices the execution of which gave rise to Plaintiffs'

19   constitutional injuries").  And even if the SAC adequately alleged that VTA agents "worked with

20   multiple representatives of the City's departments" over the course of several months, the Court is

21   unpersuaded that such allegations are sufficient to plead the existence of a requisite official policy,

22   practice or custom of the VTA.  Nor has Plaintiff identified any authority supporting such a

23   finding.  In *Lemus*, a case Plaintiff relies on, the plaintiffs alleged that the defendant county had a

24   policy and custom of permitting "sergeant shopping," a practice in which officers search for a

25   superior to approve questionable or improper conduct even in the face of another sergeant's

26   previous refusal to do so.  *Lemus v. Cnty. of Merced*, No. 15-CV-00359-MCE-EPG, 2016 WL

27   2930523, at *1 (E.D. Cal. May 19, 2016), aff'd, 711 F. App'x 859 (9th Cir. 2017).  The county

28   Case No.: 20-cv-08808-EJD
ORDER ON DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

argued that municipal liability had not been established because the complaint did not allege facts sufficient to show a widespread custom or practice of "sergeant shopping." *Id.* at *4.  In rejecting this argument, the court pointed to allegations that the officer involved "was known to embellish reports." *Id.* (quotations omitted).  The complaint also alleged that the officer "had sergeant shopped in the past and that department supervisors have tolerated the practice, which occurs throughout the organization." *Id.*  These allegations, the court reasoned, demonstrated a "widespread and persistent" practice of "sergeant shopping" sufficient to plead municipal liability under *Monell*.

Plaintiff's other cited case, *D.C. by & through Cabelka v. Cnty. of San Diego*, is inapposite.  Plaintiffs there brought § 1983 claims alleging that the County of San Diego violated plaintiffs' rights under the Adoption Act.  445 F. Supp. 3d at 893 (quotations omitted).  In denying the county's motion to dismiss the *Monell* claims, the court concluded that plaintiffs adequately established *Monell* liability because the complaint alleged that "the County had several policies, customs, or practices that caused the violations of [plaintiff's] federal rights, including not requiring a social worker to disclose known histories, behavioral, medical, and/or psychiatric problems to a foster parent, misrepresenting and/or concealing a foster child's history and needs in order to attain placement, and failing to investigate reports of sexual assaults or remove a foster child whose presence threatens other children in the home." *Id.* (quotations omitted).  Plaintiffs further alleged that the defendants' supervisors "failed to discipline, investigate, and/or report their subordinate social workers for failing to act pursuant to and/or in accordance with the County's policies, customs or practices in dealing with Plaintiffs." *Id.*

Plaintiff alleges no similar "widespread and persistent" policies, customs, or practices here.  At most, the SAC describes multiple communications or actions taken by the VTA for the purpose of effectuating a purported scheme to deprive Plaintiff of operating his Business—in other words, Plaintiff alleges the VTA engaged in multiple acts that caused a single incident.  *See Gordon v. Cnty. of Orange*, 6 F.4th 961, 974 (9th Cir. 2021) ("Generally, a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*") (quotations omitted); *see also Cavagna*

1   *v. Clearlake Police Dep't*, No. 23-CV-01686-KAW, 2023 WL 7346372, at *7 (N.D. Cal. Nov. 6,

2   2023) (dismissing *Monell* claim where plaintiff failed to "identify instances other than Decedent's

3   specific case to demonstrate a longstanding practice or custom"); *Gabriel v. Cnty. of Sonoma*, No.

4   22-CV-00781-JD, 2024 WL 1329913, at *9 (N.D. Cal. Mar. 27, 2024) ("A single or even a few

5   isolated and sporadic incidents of unconstitutional conduct are not enough to impose municipal

6   liability under Section 1983").

7        While the Court recognizes that Plaintiff here has alleged class-of-one equal protection

8   violations, which necessarily impacts only one plaintiff, Plaintiffs claims still fall short to establish

9   that the VTA's actions were the product of a policy, practice, or custom by VTA.  Unlike the

10  claims the Court previously found sufficient to state *Monell* liability against the City (*see* Order

11  33), the claims against the VTA lack similar detail regarding any frequency or multi-pronged

12  nature of the VTA's interactions with Plaintiff.  The SAC describes how the VTA "arranged one

13  of the meetings" between Defendants (SAC ¶ 64), "actively participated in two of the meetings"

14  between Defendants (*id.*), was "in communication with" other Defendants "regarding the

15  Business" (*id.* ¶ 66), and Ron Golem from the VTA "emailed [Officer] Messier" denying request

16  for egress on Plaintiff's property (*id.* ¶ 67).  Even construing the pleadings liberally, the Court

17  finds the above allegations do not support a plausible inference there was any VTA official policy,

18  practice or custom of inflicting Plaintiff's claimed injury.

19       The Court cannot definitively find that amendment would be futile.  Accordingly, the

20  conspiracy claim against the VTA is dismissed without prejudice.  Plaintiff will be given leave to

21  amend the complaint to allege a *Monell* claim as to the conspiracy claim.  In so amending,

22  Plaintiff must allege specific facts—to the extent such facts exist—demonstrating that there was a

23  "policy, custom, or practice that was the 'moving force' behind the constitutional violation[.]"

24  *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013).  Plaintiff is also reminded of his

25  Rule 11 obligations in amending, including that any "factual contentions have evidentiary support

26  or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity

27  for further investigation or discovery[.]"  Fed. R. Civ. P. 11(b)(3).

28  Case No.: 20-cv-08808-EJD
    ORDER ON DEFENDANTS' MOTIONS TO DISMISS

United States District Court
Northern District of California

1

**B.      Third Cause of Action—Conspiracy Under 42 U.S.C. § 1983**

2

Because the Court dismissed the third cause of action against VTA for failure to plead

3

*Monell* liability, the Court need not reach the VTA's remaining arguments regarding Plaintiff's

4

purported failure to adequately plead the conspiracy claim as it applies to the VTA.

5

**V.      CONCLUSION**

6

For the foregoing reasons, the City Defendants' Motion is GRANTED IN PART.

7

Plaintiff's second cause of action and Plaintiff's request for injunctive relief are DISMISSED

8

WITHOUT PREJUDICE.  The City Defendants' Motion is otherwise DENIED.

9

The VTA's Motion is GRANTED.  Plaintiff's third cause of action against the VTA is

10

DISMISSED WITHOUT PREJUDICE.

11

Any amended complaint must be filed within 21 days of this Order.

12

13

**IT IS SO ORDERED.**

14

15

Dated: June 6, 2024

16

17

_____

18

EDWARD J. DAVILA
United States District Judge

19

20

21

22

23

24

25

26

27

28

Case No.: 20-cv-08808-EJD
ORDER ON DEFENDANTS' MOTIONS TO DISMISS
15

United States District Court
Northern District of California